1  Mark Brnovich
   Attorney General
2  Firm Bar No. 14000
3
4  Joseph E. La Rue (031348)
   Senior Litigation Counsel
5  Kara Karlson (029407)
   Assistant Attorney General
6  2005 North Central Avenue
   Phoenix, AZ  85004-1592
7  Telephone (602) 542-4951
8  Facsimile (602) 542-4385
   joseph.larue@azag.gov
9  kara.karlson@azag.gov
   adminlaw@azag.gov
10
11 *Attorneys for Defendant Arizona Secretary
   of State Katie Hobbs*
12

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jessica Miracle; Rose Smallcanyon; Czaria Lord; Lonnie Arrington; Mendon Dornbrook; Mary Katz; NextGen Climate Action; and Arizonans for Fair Lending (Our Voice, Our Vote Arizona, LUCHA), <br><br> Plaintiffs, <br><br> v. <br><br> Katie Hobbs, in her official capacity as Arizona Secretary of State, <br><br> Defendant. | Case No:  2:19-cv-04694-SRB <br><br><br> **DEFENDANT SECRETARY OF STATE'S RESPONSE OPPOSING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** <br><br> **(Oral Argument Requested)** |

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 2

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 2

I.   Plaintiffs Are Unlikely to Succeed on the Merits ......................................................... 2

II.  Plaintiffs Have Not Satisfied Their Burden of
     Demonstrating That Irreparable Harm Is Likely ......................................................... 2

     A. Speculative Harm Will Not Support a Preliminary Injunction ............................ 3

     B. None of the Plaintiffs Can Demonstrate More Than
        Speculative Harm ................................................................................................. 3

          1. The Organizational Plaintiffs ........................................................................ 4

          2. The Circulator Plaintiffs ................................................................................ 7

          3. The Petition-Signer Plaintiffs ........................................................................ 9

III. Plaintiffs Have Not Established That Available
     Legal Remedies Are Inadequate ................................................................................. 10

IV.  The Balance of Equities and the Public Interest
     Favor the Secretary .................................................................................................... 11

V.   Any Preliminary Injunction Should be Limited in Scope ......................................... 13

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**CASES**

*Abbott v. Perez*,
  138 S. Ct. 2305 (2018) .................................................................................................. 11

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .................................................................................... 2 n.1

*Anderson v. United States*,
  612 F.2d 1112 (9th Cir. 1979) ........................................................................................ 13

*Angle v. Miller*,
  673 F.3d 1122 (9th Cir. 2012) ..................................................................................... 6, 7

*Arizona Right to Life Political Action Committee v. Bayless*,
  320 F.3d 1002 (9th Cir. 2003) ......................................................................................... 8

*Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*,
  398 U.S. 281 (1970) ....................................................................................................... 13

*Barnett v. Norman*, 782 F.3d 417 (9th Cir. 2015) ........................................................... 8-9

*Blair v. United States*, 250 U.S. 273 (1919) ................................................................... 8, 9

*Caribbean Marine Service Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) ....................................................................................... 3, 7

*Coalition for Economic Equity v. Wilson*,
  122 F.3d 718 (9th Cir. 1997) .......................................................................................... 12

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) ........................................................................................ 11

*Human Life of Washington Inc. v. Brumsickle*,
  624 F.3d 990 (9th Cir. 2010) ........................................................................................... 8

*Initiative & Referendum Institute v. Walker*,
  450 F.3d 1082 (10th Cir. 2006) ....................................................................................... 6

*Lair v. Bullock*,
  697 F.3d 1200 (9th Cir. 2012) ........................................................................................ 12

*Lewis v. Casey*,
   518 U.S. 343 (1996) .................................................................................................. 13, 14

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ........................................................................................................ 13

*Maryland v. King*,
   133 S.Ct. 1 (2012) ........................................................................................................... 11

*National Center for Immigrants Rights, Inc. v. I.N.S.*,
   743 F.2d 1365 (9th Cir. 1984) ........................................................................................ 14

*National Wildlife Federation v. Burlington N. R.R.*,
   23 F.3d 1508 (9th Cir. 1994) ............................................................................................ 3

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................................................ 11

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .................................................................................................. 10, 11

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) ............................................................................................................ 12

*Semple v. Griswold*,
   __ F.3d __, 2019 WL 3926932 (10th Cir. Aug. 20, 2019) ............................................... 6

*Southwest Voter Registration Educ. Project v. Shelley*,
   344 F.3d 914 (9th Cir. 2003) ..................................................................................... 1, 12

*Stanley v. USC*,
   13 F.3d 1313 (9th Cir. 1994) .......................................................................................... 13

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) .................................................................................. 13, 14

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ......................................................... 4, 9

*Takiguchi v. MRI Int'l, Inc.*,
   611 F. App'x 919 (9th Cir. 2015) ................................................................................... 14

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442, 451 (2008) ............................................................................................... 12

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) .................................................................................................. 11

*Winter v. National Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................... 2, 3

**STATUTES**

A.R.S. §19-118(C).............................................................................................*passim*

**OTHER AUTHORITIES**

Ariz. R. Civ. P. 45(e)(1)(A)............................................................................................ 10

Ariz. R. Civ. P. 45(e)(2)(A)(iv)..................................................................................... 10

**INTRODUCTION**

Plaintiffs bring a facial challenge to A.R.S. §19-118(C) (the "Act"), contending that it impermissibly regulates initiative-related speech. But as explained in the concurrently-filed Motion to Dismiss by Defendant Arizona Secretary of State (the "Secretary"), the law does nothing of the sort. It merely adds one additional tool for Arizona courts to secure compliance with lawful subpoenas, by disqualifying signatures gathered by circulators that flout a subpoena. The challenged law furthers Arizona's interest in preserving the integrity of the initiative process. Because it does not regulate speech in constitutionally-impermissible ways, Plaintiffs cannot succeed on the merits of their challenge, as explained more fully in the Motion to Dismiss.

In addition to failing on the merits, Plaintiffs' motion for a preliminary injunction suffers additional fatal deficiencies. In particular, all of Plaintiffs' feared harms are entirely conjectural—indeed stacking *multiple* speculative contingencies atop each other. Plaintiffs thus have not established that they are *likely* to suffer irreparable harm, as the Supreme Court has demanded.

Plaintiffs also have failed to demonstrate that existing legal remedies are inadequate and that an injunction is required. Should Plaintiffs ever be subject to a subpoena again they could, for example, (1) move to quash the subpoena, (2) seek to appear telephonically (as many individuals have been permitted to do previously), or (3) seek other court relief if subpoenas are issued improperly. But Plaintiffs should not be able to obtain an injunction from this Court against a law promoting and protecting the integrity of the state's initiative process simply because they refuse to avail themselves of remedies they have available in state court.

Injunctive relief is also inappropriate because the balance of harms tips in favor of the Secretary. That is particularly so as Plaintiffs' proposed remedy is deeply disruptive of state electoral and judicial procedures, and is thus strongly disfavored. *See, e.g.*, *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) ("a federal court cannot lightly interfere with or enjoin a state election").

1

1   Finally, even if any injunctive relief is proper, the injunction sought by Plaintiffs
2   is drastically overbroad and improper.  Instead, any relief must be narrowly tailored.
3   For all of these reasons, Plaintiffs' motion for a preliminary injunction should be
4   denied.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy never awarded as of right" but instead "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.[1]

## BACKGROUND

The relevant background for this challenge is set forth in the Secretary's Motion to Dismiss, (Doc. 16 at 3-6), which is hereby incorporated by reference.

## ARGUMENT

**I.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS.**

For the reasons explained in the Secretary's Motion to Dismiss, the Plaintiffs cannot prevail on their claims.  (Doc. 16 at 6-17.)  As a result, Plaintiffs cannot show likely merits success.  That alone precludes any preliminary injunctive relief.

**II.  PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN OF DEMONSTRATING THAT IRREPARABLE HARM IS LIKELY.**

Plaintiffs' request also fails because they have failed to prove that they are *likely* to suffer irreparable harm.  That failure bars any preliminary injunction.  *Winter*, 555

---

[1] The Ninth Circuit recognizes an alternative sliding-scale test, which is irrelevant here because "the balance of hardships" does not "tip[] *sharply* in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Moreover, that test squarely violates *Winter*, which specifically mandates that Plaintiffs be "likely" to prevail, not merely raise "serious questions." 555 U.S. at 20 (requiring that "[a] plaintiff seeking a preliminary injunction *must* establish that he is likely to succeed on the merits") (emphasis added).

2

1  U.S. at 20 ("A plaintiff seeking a preliminary injunction *must* establish . . . that he is likely to suffer irreparable harm in the absence of preliminary relief") (emphasis added). *See also id*. at 21-22 (rejecting the "possibility" of harm standard, and holding that the Court's "frequently reiterated standard *requires* plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction") (first emphasis added). Here, Plaintiffs' harm is entirely speculative—indeed, it is speculative multiple times over because any harm could only occur if *multiple* contingent events *all* came to pass. Such conjectural harm does not satisfy *Winter*'s mandate that irreparable harm is *likely*.

### A. Speculative Harm Will Not Support a Preliminary Injunction.

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Speculative injury does not constitute irreparable harm sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id*. When plaintiffs cannot demonstrate "imminent or likely" harms, an injunction is unwarranted. *Id*. at 675. *See also Nat'l Wildlife Fed'n v. Burlington N. R.R.*, 23 F.3d 1508, 1512 n.8 (9th Cir. 1994) (explaining that preliminary injunctions issue when there is evidence "of *certain* future harm . . . not just *speculative* harm") (emphasis added).

Here, none of the Plaintiffs can demonstrate the imminent or likely harms necessary for preliminary injunctive relief. They each only demonstrate, *at most*, speculative harms. An injunction therefore would be unwarranted, even if Plaintiffs had demonstrated likely merits success.

### B. None of the Plaintiffs Can Demonstrate More Than Speculative Harm.

Here, the alleged harms that Plaintiffs fear rest on little more than conjecture. For

3

such harms to occur, multiple contingent events would all have to occur. Specifically, the "harm" of which Plaintiffs complain, disqualification of signatures that they collect, cannot occur pursuant to the Act unless and until: **(1)** paid or out-of-state circulators are retained to circulate initiative petitions; **(2)** the initiative gathers sufficient signatures in support of the initiative that it appears likely it will qualify for the ballot; **(3)** a challenge is brought to the eligibility of *that* initiative for the ballot; **(4)** the challenger has a court issue a subpoena to a registered circulator who circulated petitions and gathered signatures for that initiative; **(5)** the challenger properly serves the registered circulator, **(6)** the subpoena target is unable to quash the subpoena or obtain adequate accommodations, and **(7)** the registered circulator flouts the subpoena and does not appear in court. *All of these events* must happen before any signatures will be disqualified pursuant to A.R.S. §19-118(C). But, it is uncertain that *any* of those things will occur, let alone *all* of them.

"[B]ecause 'multiple contingencies' must occur before the alleged injury" would occur, the threatened harm here is "too remote and speculative to constitute an irreparable injury meriting preliminary injunctive relief." *Caribbean Marine Servs. Co.*, 844 F.2d at 675.

### 1. The Organizational Plaintiffs.

Plaintiff NextGen Climate Action avers that it "intends" to promote or fund initiatives in the future, (Doc. 1 ¶ 26), but it does not aver in the Complaint or its declaration that it has any concrete plans to do so, or even that it is considering a particular initiative at the moment. NextGen Climate Action's allegations of harm are thus purely speculative—no harm can possibly occur to it under the Act if it never promotes or funds another initiative; and, at the moment, it has no plans to do so. *Cf. Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("'[S]ome day' intentions— without any description of concrete plans, or indeed even any specification of *when* the some day will be" are insufficient to support standing).

Plaintiff Arizonans for Fair Lending avers that it is sponsoring an initiative and

4

1  circulating petitions. (Doc. 1 ¶ 27.) But to qualify for the ballot, Arizonans for Fair
2  Lending must gather 237,645 signatures. (*Id.* ¶ 40.)[2] It is unknown whether it will
3  successfully do so.[3] If it does not, a court challenge involving this Plaintiff will be
4  exceedingly unlikely.

5  Even if Arizonans for Fair Lending gathers sufficient signatures, it might not face
6  a court challenge. Notably, there were multiple initiative efforts in 2018 but only three
7  were challenged in court.[4] And without a court challenge, there will be no subpoenas to
8  its circulators, and A.R.S. §19-118(C) will have no effect whatsoever.

9  Similarly, even if there is a court challenge, it is speculative that the challengers
10 will issue subpoenas and, if so, whether a registered circulator will choose to defy a
11 subpoena. The harm of signature disqualification that Arizonans for Fair Lending
12 alleges is thus far too speculative warrant preliminary injunctive relief.

13 In addition, even if signatures were struck, and the initiative failed to qualify for
14 the ballot, that still might not justify injunctive relief. As the Tenth Circuit has very
15 recently explained, "Plaintiffs ha[d] not identified, nor could [the court] find, any

---

[2] *See also* **Exhibit 1**, Arizona Secretary of State, Initiative, Referendum and Recall Applications for the 2020 General Election, *available at* https://apps.arizona.vote/irr/IRR/2020-general-election/2445/18/0 (indicating that I-16-2020, the "Arizona Fair Lending Act" initiative, must gather 237,645 signatures to qualify for the ballot).

[3] For example, an organization called Safer Arizona 2018 tried to qualify "The Safer Arizona Cannabis Legalization Act" initiative, which would legalize the possession of cannabis for adults. **Exhibit 2**, Cannabis Initiative Application, No. I-12-2018, *available at* https://apps.azsos.gov/election/2018/general/ballotmeasuretext/I-12-2018.pdf. Despite petition circulation during the spring and summer of 2018, the initiative failed to gather enough signatures to qualify for the ballot. **Exhibit 3**, Ray Stern, "Divisive Cannabis Group Safer Arizona Fails to Get Legalization Measure on Ballot," *Phoenix New Times*, July 6, 2018, available at https://www.phoenixnewtimes.com/news/safer-arizona-legalization-cannabis-marijuana-2018-election-10590298. As a result, no one brought a court challenge against it, and A.R.S. §19-118(C) had no effect.

[4] **Exhibit4**, Arizona Secretary of State, 2018 Initiatives, Referendums & Recalls, *available at* https://apps.azsos.gov/election/2018/general/initiatives.htm (listing all seventeen initiative applications for the 2018 general election).

1 precedent holding that the failure of a ballot initiative is an adverse government action 2 that discourages or penalizes the exercise of First Amendment rights." *Semple v.* 3 *Griswold*, __ F.3d __, 2019 WL 3926932, at *6 (10th Cir. Aug. 20, 2019). "This is not 4 surprising because, taken to its logical end, Plaintiffs' approach would embroil the 5 federal courts in nearly every procedural hurdle imposed by state legislatures on the 6 citizen initiative process. And, as we discussed above, 'laws that determine the process 7 by which legislation is enacted' do not implicate the First Amendment." *Id.* (quoting 8 *Init. & Ref. Inst. v. Walker*, 450 F.3d 1082, 1099-1100 (10th Cir. 2006)).

9 Arizonans for Fair Lending seeks to avoid this result by pleading that, if A.R.S. 10 §19-118(C) is not enjoined, the cost and difficulty of qualifying an initiative for the 11 ballot will increase. (Doc. 1 ¶ 27.) But, this argument fails for two reasons.

12 First, the Ninth Circuit rejected the contention that laws that "make[] it more 13 difficult and expensive to qualify an initiative for the ballot" automatically create a 14 cognizable injury. *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012). Rather, 15 increased "expense" and "difficulty" are but two of many factors to be evaluated when 16 courts determine how severe of a burden a regulation imposes on the initiative process. 17 *Id*. Cost and difficulty, by themselves, are not legally-sufficient injuries. *Id*.; *see also* 18 *Semple*, 2019 WL 3926932, at *6.

19 *Angle* involved a challenge to a Nevada law requiring signatures in support of 20 initiatives to be gathered from all geographic regions of the state. 673 F.3d at 1126-27. 21 The *Angle* plaintiffs claimed that their circulators were located in the southern portion of 22 the state, and it would be difficult and expensive to gather signatures in the northern 23 portion. *Id*. at 1133-34. The Ninth Circuit rejected this argument, placing great weight 24 on the fact that the plaintiffs failed to show why their volunteer circulators could not 25 drive to northern Nevada to circulate petitions, why they could not recruit different 26 volunteers in northern Nevada, or why they could not hire circulators to do the work in 27 the north—despite any increase in costs. *Id*. at 1134. The court concluded that the 28 plaintiffs "ha[d] not presented any evidence that, despite reasonably diligent efforts, they

6

1  and other initiative proponents have been unable to qualify initiatives for the ballot as a
2  result of [the challenged law]." *Id*.

3        The same is true here: Plaintiff Arizonans for Fair Lending has presented no
4  evidence demonstrating that it would be unable to hire circulators that would comply
5  with validly issued subpoenas.  Doing so might potentially involve some marginal costs
6  (although Plaintiffs' have not carried their burden on that as discussed next), but such
7  cost is no more worthy of injunctive relief here than in *Angle*.

8        Second, the averment by Arizonans for Fair Lending, that it "believes it is highly
9  likely that the initiative will be challenged in court," (*id*.), is no more concrete than the
10 testimony rejected as insufficient by the Ninth Circuit in *Caribbean Marine Services*,
11 844 F.2d at 675. That plaintiff submitted a declaration from the owner of a boat with an
12 all-male crew attesting that accommodating a female onboard "may be costly," and that
13 he feared his other employees might harass a female observer and thereby subject him to
14 increased liability risk.  *Id*.  The Ninth Circuit held that neither allegation established the
15 required "imminent threat" of injury necessary to qualify for preliminary injunctive
16 relief.  Adding the self-serving words "highly likely," without more, does not transform
17 mere speculation into concrete likelihood.

18       **2.    The Circulator Plaintiffs.**

19      The same analysis holds true for the Circulator Plaintiffs (Miracle, Lord, and
20 Smallcanyon): none alleges the potential of an actual, future injury; and, the injuries they
21 do allege are speculative in nature.

22       No Circulator Plaintiff actually alleges that she will not circulate petitions so long
23 as A.R.S. §19-118(C) is effective.[5]  Thus, no Plaintiff pled sufficient facts to establish

---

[5] Plaintiff Smallcanyon provides conflicting testimony and averments.  First, the Complaint, which is not verified, says that "[t]he Circulator Plaintiffs are *hesitant* to circulate initiative petitions again if [A.R.S. §19-118(C)] is still in effect . . . ." (Doc. 1 ¶ 8) (emphasis added).  Later, Smallcanyon avers in the unverified Complaint that she "is not willing" to circulate initiative petitions unless the challenged law is enjoined. (*Id*. ¶ 21.) But in her declaration in support of the preliminary injunction motion, Smallcanyon declares she is "not sure" whether she will circulate initiative petitions again if A.R.S.

1  First Amendment chill, which requires that plaintiffs "hold [their] tongue[s]" and refrain
2  from speaking. *Ariz. Right to Life Polit. Action Comm. v. Bayless*, 320 F.3d 1002, 1006
3  (9th Cir. 2003). *See also Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990,
4  1000 (9th Cir. 2010) (noting that "self-censorship" of speech chills First Amendment
5  free speech rights and is a constitutional injury). Nor did any Circulator Plaintiff declare
6  that she intends to circulate initiative petitions as a registered circulator, and also intends
7  to disregard any subpoena with which she is served, so that signatures she gathers will be
8  subject to disqualification.

9  In fact, no Circulator Plaintiff actually states that she intends to circulate initiative
10 petitions in the future. Rather, each Circulator Plaintiff pleads that she is undecided
11 whether she will circulate initiative petitions in the future if the Act remains effective.
12 (Doc. 1 ¶8.) Thus, it is not clear that any Circulator Plaintiff will ever again face even
13 the possibility of disqualification of signatures under the Act. The injury the Circulator
14 Plaintiffs fear—they may have to come to court if they are subpoenaed, or the signatures
15 they gather will be disqualified—is too speculative to warrant the preliminary relief
16 Plaintiffs seek.

17 In reality, the "injury" that the Circulator Plaintiffs appear to be pleading is the
18 "injury" of having to attend court to provide testimony at a time inconvenient for them.
19 As discussed below, Plaintiffs have multiple avenues of ameliorating any such burdens.
20 And, in any event, presenting testimony is not an irreparable injury. It is a civic duty,
21 "necessary to the administration of justice[.]" *Blair v. United States*, 250 U.S. 273, 281
22 (1919).

23 As the Ninth Circuit recognized, "Both sides in a trial have the right to call
24 witnesses, and the power to compel witness testimony is essential to our system of

---

27 §19-118(C) remains in effect. (Doc. 9-6, Decl. of Rose Smallcanyon, ¶ 13.) Taking these statements together, and giving most weight to the testimony provided under penalty of perjury in her declaration, Plaintiff Smallcanyon has not pled the self-censorship necessary to establish First Amendment chill.

1 justice." *Barnett v. Norman*, 782 F.3d 417, 422 (9th Cir. 2015). The Circulator
2 Plaintiffs complain repeatedly that complying with subpoenas burdened them. (Doc. 1
3 ¶¶ 8, 20, 21, 22.) Yet, none filed a motion to quash or modify her subpoena. Regardless,
4 although the "duty" to provide testimony in court can "at times" be "onerous", "[t]he
5 personal sacrifice involved is a part of the necessary contribution of the individual to the
6 welfare of the public." *Blair*, 250 U.S. at 281. Accepting that burden as cognizable
7 harm would have grave repercussions for our judicial system.

### 3. The Petition-Signer Plaintiffs.

The Petition-Signer Plaintiffs (Arrington, Dornbrook, and Katz) each plead that they believe "it is likely" that they "will sign an initiative petition again in the future, and fear[] that [their] signature[s] will again be invalidated due to the circulator's" failure to comply with a subpoena. (Doc. 1 ¶¶ 23, 24, 25.) Yet, the Petition-Signer Plaintiffs do not aver that they have any initiative in mind that they want to support by offering their signature. They do not even aver that they are aware of the subject matter of any of the initiatives now being offered for support in preparation for the 2020 General Election. They each merely include the boiler-plate language indicating that they intend to sign initiatives in the future, and fear their signature will be disqualified. Such "vague desire[s]" "without any description of concrete plans" are "insufficient to satisfy the requirement of imminent injury." *Summers*, 555 U.S. at 496.

Before the Petition-Signer Plaintiffs' signatures could be disqualified under the Act, a myriad of events must happen. First, these Plaintiffs must decide to offer their signatures in support of a particular initiative. (As to which specific initiative, we can do no more than guess). Then, they must sign a petition supporting the initiative. The circulator whose petition they sign must be a *registered* circulator—either a professional, or an out-of-state volunteer—since only those circulators are subject to the Act. Then, the initiative must gather sufficient signatures that it appears likely to qualify for the ballot. A challenger must then challenge the eligibility of the initiative and subpoena the particular circulator whose petition sheet the Petition-Signer Plaintiffs signed. And

9

finally, that circulator must choose to flout the subpoena by neither appearing in court nor seeking to quash or modify it. It is simply unclear that *any* of that will happen, let alone *all* of it. The harm alleged is too speculative to warrant preliminary injunctive relief.

## III. PLAINTIFFS HAVE NOT ESTABLISHED THAT AVAILABLE LEGAL REMEDIES ARE INADEQUATE.

Plaintiffs' request for a preliminary injunction suffers from another fundamental defect: Plaintiffs have not demonstrated that existing legal remedies are inadequate to address their feared harms. But one of the "basic requisites of the issuance of equitable relief," here injunctive relief, is "the inadequacy of remedies at law." *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974). Plaintiffs' failure is thus fatal to their instant request.

A person faced with issuance of a subpoena, including one regarding election law compliance, has many remedies at law to address overly burdensome or improper subpoenas. Plaintiffs chose to avail themselves of none of them, and instead rushed to this Court for relief.

Plaintiffs could, for example, move to quash a subpoena under Arizona Rule of Civil Procedure 45, including by asserting that the subpoena would "subject[] [them] to undue burden or expense." Ariz. R. Civ. P. 45(e)(2)(A)(iv). They further could argue that the party issuing the subpoena failed to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* 45(e)(1)(A). Plaintiffs similarly could seek to modify subpoenas, to allow them to attend hearings telephonically if physical presence was too burdensome. Plaintiffs do nothing to demonstrate why this procedure is inadequate to address the harms they fear.

Notably, several circulators in the challenge to the Clean Energy initiative sought precisely this type of relief, and *all* of those requests were granted. Doc. 16-1, *Leach v. Reagan and Clean Energy for a Healthy Arizona Committee*, No. CV2018-009919 at 17 (Maricopa Cty. Super. Ct., August 27, 2018). But Plaintiffs apparently prefer to burden

this Court with a full-blown constitutional case rather than avail themselves of a simple request under state law that is *routinely if not uniformly granted*.

Plaintiff Lord does attest that she "called the phone number listed on the subpoena so that I could try to get the date moved or get it dismissed," but that "[n]o one ever answered my phone call at the courthouse." (Doc. 9-7 ¶10.) But Lord's declaration does not attest that she ever tried calling back or took any other meaningful steps (such as sending a letter to the court, etc.).[6] It is not too much to ask that Lord persist in calling the court, or take the simple step of writing a letter before asking this Court for the extraordinary remedy of an injunction. Indeed, injunctions are not available when the injuries are "merely trifling.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982). Nor is there any reason why Plaintiffs alone should enjoy unique constitutional impunity to defy subpoenas, when all other parties must go through the actual avenues that state law provides.

For all of these reasons, Plaintiffs have failed to demonstrate "the inadequacy of remedies at law" and thus cannot obtain injunctive relief. *O'Shea*, 414 U.S. at 502.

## IV. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR THE SECRETARY.

In a claim against the government, the public interest merges with the balance of the equities. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (*citing Nken v. Holder*, 556 U.S. 418, 435 (2009)). Here, the balance of equities favors the Secretary. *At most*, Plaintiffs assert only speculative harm, dependent upon a chain of events that may, or may not, happen. But if the preliminary injunction issues, Arizona's law will be enjoined. "[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State[.]" *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) (*citing Maryland v. King*, 133 S.Ct. 1, 3 (2012) (Roberts, C.J., in chambers)

---

[6] Plaintiffs' unverified Complaint does speak of "repeated attempts to call" (Doc. 1 ¶22), but that unsworn allegation is not evidence and is directly contradicted by her sworn declaration that speaks only of a single call.

11

1  (explaining that "any time a State is enjoined by a court from effectuating statutes
2  enacted by representatives of its people, it suffers a form of irreparable injury")). *See*
3  *also Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (same).

4        Plaintiffs seek an injunction against a regulation that furthers the integrity of the
5  initiative process. But the "State indisputably has a compelling interest in preserving the
6  integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).
7  "Confidence in the integrity of our electoral processes is essential to the functioning of
8  our participatory democracy." *Id.* Enjoining A.R.S. §19-118(C) will make it more likely
9  that registered initiative-petition circulators will flout subpoenas and be unavailable to
10 provide necessary testimony in challenges to the eligibility of initiatives for the ballot.
11 (*See* Doc. 16 at 5-6.) This will result in an undermining of the public confidence in the
12 initiative. The Ninth Circuit has held that the "law recognizes that election cases are
13 different form ordinary injunction cases," because "hardship falls not only upon the
14 putative defendant, the [Arizona] Secretary of State, but on all the citizens of [Arizona.]"
15 *Sw. Voter Registration Educ. Project*, 344 F.3d at 919. For that reason, "a federal court
16 cannot lightly interfere with or enjoin a state election." *Id.* at 918.

17       As such, Plaintiffs' motion "threaten[s] to short circuit the democratic process by
18 preventing laws embodying the will of the people from being implemented in a manner
19 consistent with the Constitution." *Washington State Grange v. Washington State*
20 *Republican Party*, 552 U.S. 442, 451 (2008). "Given the deep public interest in honest
21 and fair elections and the numerous available options for the interested parties to
22 continue to vigorously participate in the election, the balance of interests falls
23 resoundingly in favor of the public interest." *Lair v. Bullock*, 697 F.3d 1200, 1215 (9th
24 Cir. 2012).

25       The equities also disfavor injunctive relief because Plaintiffs' proposed injunction
26 directly interferes with state court proceedings—essentially trying to prevent state court
27 judges from imposing a particular remedy for violation of state law that occurs in their
28 courtrooms. As the Supreme Court has recognized, "[a]ny doubts as to the propriety of a

federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970).

Finally, the equities disfavor injunctive relief because the injunctive relief that Plaintiffs seek is effectively mandatory in nature: *i.e.*, Plaintiffs effectively seek injunctive relief that would mandate the Secretary to place initiatives on the ballot notwithstanding court decisions that instruct her not to. That is not a mere prohibitory injunction but rather one that "'goes well beyond simply maintaining the status quo *pendente lite*," which are "particularly disfavored.'" *Stanley v. USC*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citation omitted) (final alteration added). Plaintiffs seeking this "disfavored" remedy must meet a heightened burden; indeed, district courts must "*deny such relief*, 'unless the facts and law *clearly favor* the moving party.'" *Id.* (emphasis added) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)); *see also Anderson*, 612 F.2d at 1115 ("'[M]andatory injunctions … are not granted unless extreme or very serious damage will result ….'") (citation omitted). Plaintiffs here have made no such showing.

## V. ANY PRELIMINARY INJUNCTION SHOULD BE LIMITED IN SCOPE

As discussed above, no injunctive relief should issue here. But if this Court concludes otherwise, Plaintiffs' requested relief is plainly overbroad.

"[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs[,]" and "no broader than necessary to achieve its desired goals." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Thus, for example, "two instances [of constitutional violations] were a patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief." *Lewis v. Casey*, 518 U.S. 343, 359 (1996). And an injunction is "fatally overbroad" if it is not limited to the conduct "protected by the First Amendment[.]" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1141 (9th Cir. 2009). It is well-established

1  that "'[a]n overbroad injunction is an abuse of discretion.'" *Id.* at 1140 (citation omitted).
2  Here Plaintiffs' proposed blanket injunction is overbroad in two obvious respects.

3  *First*, any injunctive relief should be limited to the named Plaintiffs. "[I]n the
4  absence of class certification, the preliminary injunction may properly cover only the
5  named plaintiffs." *Takiguchi v. MRI Int'l, Inc.*, 611 F. App'x 919, 920 (9th Cir. 2015)
6  (quoting *Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S.*, 743 F.2d 1365, 1371 (9th Cir.
7  1984)). Plaintiffs' requested relief flouts this rule.

8  *Second*, to the extent that Plaintiffs show that particular abusive practices violate
9  the U.S. Constitution, any injunctive relief should be narrowly tailored to such practices.
10 *See Lewis*, 518 U.S. at 357 ("The remedy must of course be limited to the inadequacy
11 that produced the injury in fact that the plaintiff has established."). Thus, to the extent
12 that the Act would be applied in a manner creating an unconstitutional burden, any
13 injunctive relief should narrowly tailored to those particular applications—rather than a
14 blanket injunction. *Stormans*, 586 F.3d at 1141.

## CONCLUSION

16 Because Plaintiffs have not satisfied the requirements for any preliminary
17 injunction—let alone the blanket, mandatory injunction they seek—Plaintiffs' motion for
18 a preliminary injunction should be denied. If this Court concludes that any injunctive
19 relief is warranted, however, it should be limited to Plaintiffs and narrowly tailored to the
20 actual violations found.

22 Respectfully submitted this 23rd day of August, 2019.

Mark Brnovich
Attorney General

 s/ Joseph E. La Rue
Joseph E. La Rue
Kara M. Karlson

*Attorneys for Defendant Arizona
Secretary of State Katie Hobbs*

14

# CERTIFICATE OF SERVICE

The foregoing was e-filed with the Clerk of the Federal Court for the District of Arizona using the CM/ECF System on August 23, 2019, which served the following:

Sarah R. Gonski (# 032567)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
SGonski@perkinscoie.com

Elisabeth C. Frost (WDC# 1007632)*
Uzoma N. Nkwonta (WDC# 975323)*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211
EFrost@perkinscoie.com
UNkwonta@perkinscoie.com

*Counsel for Plaintiffs*

  s/ Misty Keys

PHX-#8092424

15