Sarah R. Gonski (# 032567)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
SGonski@perkinscoie.com
DocketPHX@perkinscoie.com

Elisabeth C. Frost (WDC# 1007632)*
Uzoma N. Nkwonta (WDC# 975323)*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211
EFrost@perkinscoie.com
UNkwonta@perkinscoie.com

*Admitted pro hac vice

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Miracle; et al., | No. 2:19-cv-04694-SRB |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO THE SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES AND PRESIDENT OF THE ARIZONA SENATE'S MOTION TO INTERVENE** |
| Katie Hobbs, in her official capacity as Arizona Secretary of State, | |
| Defendant. | |

1

**TABLE OF CONTENTS**

2

**PAGE**

3

Introduction ................................................................................................................. 1

Argument ...................................................................................................................... 2

    A.    The Legislators have not established that they are entitled to
intervene as of right under Rule 24(a)(2) ...................................................... 2

        1.    The Legislators have not asserted a sufficient, legally
protectable interest ............................................................... 3

        2.    The Legislators' asserted interest will not be compromised by
disposing of this action........................................................ 5

        3.    The Legislators have failed to make the "very compelling
showing" required to rebut the presumption that the
Secretary's representation is adequate ................................. 5

    B.    Permissive intervention is not appropriate here ........................................... 8

        1.    Intervention would almost certainly delay the resolution of the
case ...................................................................................... 9

        2.    The Legislators' intervention would precipitate partisan battles
for control that could derail this litigation........................ 10

Conclusion ................................................................................................................. 11

1

## TABLE OF AUTHORITIES

2

**PAGE**

3

4

CASES

5

*Am. Ass'n of People With Disabilities v. Herrera,*
6
    257 F.R.D. 236 (D.N.M.2008) ................................................................................. 3, 5

7
*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) ................................................................................ 2, 6

8

9
*Buquer v. City of Indianapolis,*
    No. 1:11-CV-00708-SEB, 2013 WL 1332137 (S.D. Ind. Mar. 28, 2013).......... 3, 10, 11

10
*Cal. ex rel. Lockyer v. United States,*
11
    450 F.3d 436 (9th Cir. 2006) ...................................................................................... 3

12
*Daggett v. Comm'n on Governmental Ethics and Election Practices,*
    172 F.3d 104 (1st Cir. 1999) ....................................................................................... 6
13

14
*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir.1998) ....................................................................................... 8
15

16
*Freeman v. Pittsburgh Glass Works, LLC,*
    709 F.3d 240 (3d Cir. 2013).......................................................................................  7

17
*League of United Latin Am. Citizens v. Wilson,*
18
    131 F.3d 1297 (9th Cir. 1997) .................................................................................... 8

19
*League of Women Voters of Michigan v. Johnson,*
    No. 2:17-CV-14148, 2018 WL 3861731 (E.D. Mich. Aug. 14, 2018).......................... 4
20

21
*Nw. Forest Res. Council v. Glickman,*
    82 F.3d 825 (9th Cir. 1996) ........................................................................................ 6
22

23
*One Wisconsin Inst., Inc. v. Nichol,*
    310 F.R.D. 394 (W.D. Wis 2015) ...................................................................... 3, 9, 11

24
*Perry v. Proposition 8 Official Proponents,*
25
    587 F.3d 947 (9th Cir. 2009) ................................................................................... 6, 9

26
*Perry v. Schwarzenegger,*
    630 F.3d 898 (9th Cir. 2011) ...................................................................................... 4
27

28

*PEST Comm. v. Miller*,
    648 F. Supp. 2d 1202 (D. Nev. 2009) ...................................................... 6, 10

*Planned Parenthood of Mid–Missouri & E. Kansas, Inc. v. Ehlmann*,
    137 F.3d 573 (8th Cir. 1998) ................................................................ 10, 11

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983) .................................................................... 7, 8

*Sanders Cty. Republican Cent. Comm. v. Bullock*,
    698 F.3d 741 (9th Cir. 2012) ......................................................................... 9

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ......................................................................... 2

*United States v. Arizona*,
    No. CV 10-1413-PHX-SRB, 2010 WL 11470582 (D. Ariz. Oct. 28,
    2010) ........................................................................................................ 3, 5

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ......................................................................... 6

*Venegas v. Skaggs*,
    867 F.2d 527 (9th Cir. 1989) ......................................................................... 9

**STATUTES**

A.R.S. § 12-1841 ........................................................................................... 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24................................................................................... passim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **Introduction**

The Speaker of the House and the President of the Senate (together, "Legislators") have moved to intervene as of right under Rule 24(a)(2), and alternatively, for permissive intervention under Rule 24(b), but have failed to establish that their intervention is appropriate under either provision. Their request for intervention under Rule 24(a)(2), for instance, identifies no legally protectable interest beyond their general desire to uphold the Strikeout Law, nor do they offer the "very compelling showing" necessary to overcome the presumption that their interests are adequately represented by the Secretary of State, who has since filed a dispositive motion and an opposition to Plaintiffs' Motion for Preliminary Injunction. Fed. R. Civ. P. 24(a)(2). And the Legislators' conclusory, bare-bones discussion of permissive intervention under Rule 24(b) fails to demonstrate why the Court should exercise its discretion to multiply the parties in this lawsuit, which will only result in delay and increased litigation costs.

Aside from their failure to satisfy the basic requirements of Rule 24, the most compelling reason to deny the Legislators' permissive intervention is evident from the face of their motion itself: it would inject partisanship into otherwise politically neutral litigation without providing any meaningful offsetting benefit. Their unmistakably partisan motion insinuates that the Secretary cannot be trusted as a party in this litigation because she is a Democrat, Mot. at 9; hints that the Court should take her partisan affiliation "into consideration," *id.*; charges that "officials often refuse to defend laws with which they disagree," leaving it up to the reader to presume—without any basis—that such is the case here, Mot. at 7, and speculates that collusion may be in the air because one of the Secretary's staffers previously worked at the same thousand-lawyer law firm as Plaintiffs' counsel, where a number of attorneys (including one of Plaintiffs' counsel here) financially supported the Secretary's 2018 campaign, Mot. at 9, among other political jabs. Such charges may be well suited for a political attack advertisement but provide no meaningful insight on the legal issues before the Court.

Plaintiffs prefer to leave partisanship where it belongs—in the political arena—and instead suggest a return to the relevant legal standards for intervention under Rule 24. Because the Legislators have failed to meet their burden to demonstrate that their intervention in this lawsuit is appropriate under Rule 24, their Motion should be denied.

### Argument

**A.** **The Legislators have not established that they are entitled to intervene as of right under Rule 24(a)(2).**

The Legislators assert a general, undifferentiated interest in enforcing the State's laws and cite the Secretary's political affiliation—and nothing else—as evidence that they are not adequately protected by the defendant in this case, both of which fall well short of the requirements to intervene as of right. To establish entitlement to intervention under Rule 24(a)(2), a movant must show: (1) that their motion was timely; (2) an interest relating to the property or transaction that is the subject of the action; (3) that disposing of the action, as a practical matter, may impair its ability to protect its interest; and (4) its interest is not adequately represented by existing parties to the litigation. Fed. R. Civ. P. 24(a)(2); *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), *as amended* (May 13, 2003). "Each of these four requirements must be satisfied to support a right to intervene." *Id.* (citing *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997)). "The party seeking to intervene bears the burden of showing that *all* the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (citation omitted). Here, the Legislators have failed to meet their burden of demonstrating three of the four essential elements: (1) that they have a sufficient, legally protectible interest in the case; (2) that their ability to protect their purported interests would be compromised by this litigation; and (3) that their interests are not adequately represented by the Secretary.

**1.      The Legislators have not asserted a sufficient, legally protectable interest.**

In a lawsuit challenging the constitutionality of a state statute, intervention as of right under Rule 24(a)(2) requires much more than the Legislators' general interest in seeing laws upheld. It limits intervention to those who demonstrate a direct and specific interest. *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). The asserted interest cannot be generalized or undifferentiated but must be particular to the proposed intervenor. *Id. See also One Wisconsin Inst., Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis 2015) ("To intervene as of right, a party must demonstrate 'a direct, significant, and legally protectable interest in the question at issue in the lawsuit …That interest must be unique to the proposed intervenor.") (citation omitted). "The Ninth Circuit Court of Appeals has observed that individual legislators do not have legally protectable interests in challenging or defending legislation sufficient to support intervention as a matter of right in the absence of some sort of actual personal injury." *United States v. Arizona*, No. CV 10-1413-PHX-SRB, 2010 WL 11470546, at *2 (D. Ariz. Oct. 28, 2010) (collecting cases).

At its core, the individual Legislators' Motion expresses a general desire to "uphold[] the constitutionality of an Arizona law," Mot. at 5, which is an interest that can be claimed by just about anyone and has been rejected as a basis for intervention as of right. *Arizona*, 2010 WL 11470582 at *2. Like then-President of the Senate Russell Pierce who was denied intervention in *United States v. Arizona*, the Legislators make no representation that they are authorized to represent the Legislature as a whole *in this lawsuit*, and their interests as individual legislators are "general, [and] shared by many other citizens of the state of Arizona as well as [by] fellow legislators." *Arizona,* 2010 WL 11470582 at *3. Other federal courts have likewise repeatedly and consistently rejected intervention by those asserting such general interests in the outcome of litigation. *Id.* (collecting cases); *see also Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 254 (D.N.M.2008) (concluding that state legislator lacked legally protectable interest that would entitle them to intervene in a voting rights case); *Buquer v. City of Indianapolis*, No. 1:11-CV-00708-SEB, 2013 WL

1   1332137, at *1 (S.D. Ind. Mar. 28, 2013) (denying intervention to three state legislators);

2   *League of Women Voters of Michigan v. Johnson*, No. 2:17-CV-14148, 2018 WL 3861731,

3   at *1 (E.D. Mich. Aug. 14, 2018) (denying intervention to individual state legislators). The

4   Legislators offer no compelling reason for the Court to set aside longstanding and

5   reasonable intervention rules that prevent litigation from turning into a chaotic free-for-all.

6   Tellingly, the Legislators' Motion is entirely (and likely intentionally) vague about

7   whose interests they represent: theirs or the entire legislative body. And instead of asserting

8   the kind of specific, legally protectible interests required by Rule 24(a)(2), the Legislators

9   argue that A.R.S. § 12-1841 gives them "Article III standing to intervene in this case." Mot.

10  at 5. But that tangled theory is grounded in error. As a threshold matter, § 12-1841 only

11  grants the Legislators a right to intervene in certain *state court* proceedings. A.R.S. § 12-

12  1841(D) (expressly limiting intervention rights to "proceeding[s] … subject to the notice

13  requirements of this section," which exclusively governs state courts). Moreover, federal

14  law is clear that *all* proposed intervenors must satisfy the distinct requirements of Rule 24

15  in order to insert themselves into an already-existing lawsuit, lest lawsuits be flooded with

16  unnecessary litigants. *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) (noting

17  that an applicant's failure to satisfy any Rule 24 requirement is fatal to an application for

18  intervention).

19  The Supreme Court's ruling in *Karcher v. May* does not suggest otherwise and the

20  Legislator's reliance on that case to argue that state law grants federal intervention rights to

21  legislators is misplaced. 484 U.S. 72, 78-80 (1987). At issue in *Karcher* was whether New

22  Jersey law permitted former presiding officers of the New Jersey legislature to continue to

23  represent the legislature as a whole in litigation after they no longer held the offices that

24  originally gave them the right to speak for the entire body. *Id* at 78. The Court's ruling did

25  not dispense with Rule 24's requirements—or interpret them to grant state lawmakers a

26  right of intervention in every case challenging a state law, as the Legislators' Motion

27  implies—rather, the Court found intervention appropriate under federal standards because

28  the legislature was the only state actor willing to represent the interests of the state. *Id.* at

79. "The Legislature sought to perform a task which normally falls to the executive branch, but which, in this case, the executive branch refused to perform," and "no other party defendant was willing to defend the statute." *Id* at 80. Accordingly, the intervenors satisfied Rule 24's requirement by demonstrating a separate protectible interest, and the intervention of the legislature *as a whole* (not individual legislators) was appropriate under Rule 24. *Id.* Because the Legislators have failed to establish that they have a sufficiently direct and specific legally protectible interest in this suit, they have failed to make a threshold showing that they are entitled to intervention as of right under Rule 24.

### 2. The Legislators' asserted interest will not be compromised by disposing of this action.

Because the Legislators have failed to demonstrate any protectible interest in this lawsuit, it also follows that the Legislators cannot demonstrate that "the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest." *See Arizona*, 2010 WL 11470582 at *3 (holding that because individual legislator had failed to establish protectible interest the practical impairment requirement was also not met). "Where no protectable interest is present, there can be no impairment of the ability to protect it." *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 252 (D.N.M. 2008). Like Senator Pearce's nearly identical motion in *Arizona*, "the failure to establish these elements is fatal" to the Legislators' attempt to intervene. 2010 WL 11470582, at *3.

### 3. The Legislators have failed to make the "very compelling showing" required to rebut the presumption that the Secretary's representation is adequate.

While the Legislators suggest that the Secretary's political affiliation will somehow prevent her from mounting a vigorous defense, the Secretary has since filed an opposition to Plaintiffs' Motion for Preliminary Injunction *and* a Motion to Dismiss (the Legislators only filed a proposed Answer). Thus, the Secretary's objective, as demonstrated by her recent filings, is to prevent Plaintiffs from obtaining their requested relief and to get the case dismissed. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises," which can be

overcome only by a "compelling showing" that representation is inadequate. *Arakaki*, 324 F.3d at 1086. A separate presumption of adequacy arises when a state official acts on behalf of a constituency that she represents; in that instance, courts will presume that the defendant adequately represents her citizens when the applicant shares the same interest, unless the movant makes a "*very* compelling showing to the contrary." *Id.* (emphasis added); *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002); *PEST Comm. v. Miller*, 648 F. Supp. 2d 1202, 1212-14 (D. Nev. 2009). Three factors are relevant to this inquiry: (1) whether an existing party will likely make a proposed intervenor's arguments; (2) whether the existing party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki,* 324 F.3d at 1086.

The Legislators ignore the first and third factors entirely, and broadly hint, with no evidence, that the Secretary is unwilling to defend the Strikeout Law. Their Motion to Intervene does not identify a single argument they would make that the Secretary will not, nor do they offer any "necessary element to the proceedings that other parties would neglect." *Arakaki*, 324 F.3d at 1086.[1] Indeed, it is not at all clear what arguments or evidence they could produce that are not otherwise available to other parties. If anything, the Legislators' motion suggests that their presence would greatly complicate litigation by introducing an internecine power struggle among the Secretary, Attorney General, and

---

[1] After the Legislators filed their motion, the Secretary confirmed that it will not make the single merits argument discussed in the Legislators' brief that the Secretary is not a proper defendant. Mot. at 2-4; *see also* Doc. 19 at 2. As the Secretary states, the argument is "misguided" because the plain language of the Strikeout Law identifies the Secretary as the party ultimately tasked with invalidating signatures under the law, and she is the officer who determines whether initiatives have gathered enough signatures to qualify for the ballot. *Id.* at 2 (citing statutes). But a single differing argument is not enough to justify intervention. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009) (reiterating holding that "'mere differences in litigation strategy are not enough to justify intervention as a matter of right.'" (*quoting City of Los Angeles*, 288 F.3d at 402–3 (internal omissions and alterations omitted)); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (holding that "minor differences in opinion" between the parties and proposed intervenor "fail[ ] to demonstrate inadequacy of representation"); *see also Daggett v. Comm'n on Governmental Ethics and Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999) (noting that "[o]f course, the use of different arguments as a matter of litigation judgment is not inadequate representation *per se*").

Legislators, to determine who can and should drive litigation strategy in this case. *See* Mot. at 6-8 (noting anticipated differences in litigation strategies while indicating distrust of the Secretary due to her partisan affiliation); *see also infra* note 1.

The Secretary's two substantive briefs to date have also made clear that she intends to defend the law on a wide variety of legal theories, *see generally* Resp. to Pls' Mot. for Prelim. Inj.; *see also* Motion to Dismiss, which squarely contradicts the Legislators' "sympathy of outlook" theory, Mot. at 9. All that remains of the Legislators' argument that the current representation is inadequate is the fact that the Secretary is a Democrat and the Legislators are Republicans. Putting aside the troubling political and First Amendment implications of the Legislators' claim, it makes little sense when applied to a constitutional challenge to the Strikeout Law, which the Secretary *supported* as a then-State Senator. *See* Arizona State Legislature, HB2107 (2014) Vote Detail, available at https://apps.azleg.gov/BillStatus/BillOverview/32957 (last accessed Sept. 4, 2019). The state statute at issue in this lawsuit simply does not fit the Legislators' partisan narrative, and, in any event, the Ninth Circuit has explicitly cautioned against taking partisan affiliation of state actors into account, explaining that "the mere change from one presidential administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

Equally troubling are the Legislators' attacks on Plaintiffs' counsel's individual political donations, and the Secretary's staffer's employment history, neither of which are relevant to any issue before the Court. Their only purpose in highlighting these entirely commonplace activities—i.e., participating in the political process and switching jobs—is to advance an unfortunate and legally-erroneous inference that the parties might be inclined to collude with one another. The Legislators are not the first litigants to suggest that campaign donations lead to an inference of bias, and courts have roundly rejected that inference. *See, e.g.*, *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 254 (3d Cir. 2013) (noting that courts have generally concluded that "election support" neither

1   establishes "evident partiality" nor creates "an appearance of bias"). Here, there is no
2   evidence to suggest that the parties' representations are proceeding with any motive other
3   than to advance their competing interests through the cordial but adversarial process that is
4   the bedrock of our legal system. The same is true for the parties' counsel, and they do not
5   factor into the Rule 24 analysis.  The Legislators' conclusory assertions to the contrary do
6   not withstand scrutiny.

7        That the Legislators' collusion-based theory dwells on attenuated connections
8   between counsel and the Secretary's staff rather than the parties themselves distinguishes
9   this case from the main case the Legislators cites to support its argument. *Sagebrush,* 713
10  F.2d 525. In *Sagebrush*, the government defendant was found to be an inadequate
11  representative where he had previously served as the head of the organization representing
12  the plaintiffs. *Id.* at 528.  Here, there is no such intermingled relationship between the
13  Secretary and any of the Plaintiffs.  The presumption of adequacy must be overcome with
14  more than just unsupported accusations of collusion.  *See League of United Latin Am.*
15  *Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997) (upholding denial of intervention
16  where claims of inadequacy of state defendant representation was "purely speculative").

17        Because the Legislators do not and cannot make the "very compelling showing"
18  required to overcome the presumption that their interests are adequately represented by the
19  Secretary, they are not entitled to intervene as of right under Rule 24(a)(2).

20        **B.      Permissive intervention is not appropriate here.**

21        The Legislators' alternative request that the Court grant permissive intervention
22  should likewise be denied. Upon timely motion, "an applicant who seeks permissive
23  intervention must prove that it shares a common question of law or fact with the main action
24  and that the court has an independent basis for jurisdiction over the applicant's
25  claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir.1998). But even if the applicant
26  satisfies the threshold requirements, a district court has discretion to deny permissive
27  intervention, *id.*, particularly when the applicant's interests are adequately represented by
28  the existing parties, or when intervention would unduly delay or prejudice the original

parties. *Venegas v. Skaggs,* 867 F.2d 527, 530–31 (9th Cir. 1989). Fed. R. Civ. P. 24(b)(1)(B). Moreover, when a proposed intervenor fails to overcome the presumption of adequate representation, "the case for permissive intervention disappears." *Nichol*, 310 F.R.D. at 399 (quoting *Menominee Indian Tribe of Wis. v. Thompson*, 164 F.R.D. 672, 678 (W.D. Wis. 1996)); *see also Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (holding district court properly exercised discretion in denying permissive intervention where movants were adequately represented by existing parties).

Because the Legislators' proffered interests are already shared by the Secretary and they all share the same ultimate goal of upholding the Strikeout Law against Plaintiffs' legal challenge, permissive intervention is not appropriate. Allowing the Legislators to intervene would inevitably delay the proceedings, increase litigation costs, and prejudice the existing parties. Further, it would embroil this Court in partisan power struggles more suited to the political arena than to the federal courts.

> ### 1.    Intervention would almost certainly delay the resolution of the case.

Timely resolution of this case and preliminary injunction is of critical importance given that campaigns to qualify initiatives for the 2020 ballot are already underway. *See Nichol*, 310 F.R.D. at 399 (denying permissive intervention in voting rights case where "the nature of this case requires a higher-than-usual commitment to a swift resolution . . . . even minor delays to the court's resolution . . . could jeopardize the parties' ability to obtain" meaningful relief). "When, as here, a party seeks to engage in political speech in an impending election, a "delay of even a day or two may be intolerable." *Sanders Cty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012).

The Legislators' involvement would almost certainly result in delay. The Secretary has already submitted her response to Plaintiffs' Motion for Preliminary Injunction and a Motion to Dismiss, and briefing is well underway. Oral argument for both motions is set for 10 a.m. on September 25. If the Legislators are permitted to intervene, either oral argument must be rescheduled for a later date or the Legislators will have to submit their

preliminary injunction and any other briefing on a truncated schedule, with Plaintiffs having an exceedingly compressed schedule within which to write responsive briefs before oral argument.

Nor will this delay be limited to oral argument and pleadings immediately before the Court. With the crowding of additional parties, litigation becomes more expensive and complex and takes longer at every stage. Briefing schedules become more complicated, the number of pages that the parties and the Court will have to contend with in briefing multiplies, scheduling is more difficult, and negotiating stipulations consumes more time. It also introduces several more defendants for discovery purposes, leading to additional and often duplicative depositions, discovery requests, document productions, and so on.  *See PEST*, 648 F. Supp. 2d at 1214 (declining to allow permissive intervention even where factors met because interests were already met by existing parties and "adding them as parties would unnecessarily encumber the litigation.") Thus, in a case such as this where time is of the essence and the existing parties already represent all pertinent interests, permissive intervention is not appropriate and should not be granted.

### 2.    The Legislators' intervention would precipitate partisan battles for control that could derail this litigation.

As is evident from the partisan tone of the Legislators' motion, permitting isolated political actors to insert themselves into the case risks injecting partisan politics into an otherwise nonpartisan legal dispute. In nearly identical contexts, other courts have denied permissive intervention while noting the federal courts' obligation to "to take pains to avoid entering the fray of interbranch political controversies." *Buquer,* 2013 WL 1332137, at \*7; *see also Planned Parenthood of Mid–Missouri & E. Kansas, Inc. v. Ehlmann*, 137 F.3d 573, 578 n. 5 (8th Cir. 1998) ("Federal courts should exercise [] caution when, as in this case, there exists a political interbranch controversy between state legislators and a state executive branch concerning implementation of a bill.").

Federal courts throughout the country have repeatedly recognized that the risk of political wrangling is high in voting rights cases, and that "[i]n cases like this one, where a

1  group of plaintiffs challenge state legislation, the court should evaluate requests to intervene
2  with special care, lest the case be swamped by extraneous parties who would do little more
3  than reprise the political debate that produced the legislation in the first place." *Nichol*, 310
4  F.R.D. at 397; *see also Ehlmann*, 137 F.3d 573 (denying state legislators intervention in
5  action alleging unconstitutionality of state law where legislators preferred different
6  litigation strategy than Attorney General); *Buquer*, 2013 WL 1332137 at *1.

7        This litigation is not about partisanship or political gain. It is not about Democrats
8  or Republicans. It is about a group of Plaintiffs, each of whom wish to engage in core
9  political activity, who are challenging the constitutionality of a state law that impedes their
10 ability to so. Deciding whether their claims have merit is the routine business of federal
11 courts, who go about the task every single day without the input of isolated dissenting voices
12 from the state's legislative branch. There is no need to change that here. Like any other
13 citizens, the Legislators are free to monitor proceedings and to seek leave to participate as
14 *amici curiae* if they wish to be separately heard. But their presence as parties in this lawsuit
15 would delay and complicate proceedings while providing no meaningful benefit to the
16 Court, the existing parties, or the interests of justice.

17                                    **Conclusion**

18        For the reasons set forth above, the Legislators' motion to intervene should be
19 denied.

20 Dated: September 4, 2019                *s/ Sarah R. Gonski*
                                          Sarah R. Gonski (# 032567)
21                                        PERKINS COIE LLP
                                          2901 North Central Avenue, Suite 2000
22                                        Phoenix, Arizona 85012-2788

23                                        Elisabeth C. Frost (WDC# 1007632)*
                                          Uzoma N. Nkwonta (WDC# 975323)*
24                                        Perkins Coie LLP
                                          700 Thirteenth Street NW, Suite 600
25                                        Washington, D.C. 20005-3960

26                                        *Admitted pro hac vice*

27                                        *Attorneys for Plaintiffs*

28

1

**CERTIFICATE OF SERVICE**

2         I hereby certify that on September 4, 2019, I electronically transmitted the attached

3   document to the Clerk's Office using the CM/ECF System for filing.

4

5                                    *s/ Daniel R. Graziano*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28