**CANTELME & BROWN, P.L.C.**
A Professional Liability Company
2020 S. McClintock Drive, Suite 109
Tempe, Arizona 85282
Tel (602) 200-0104   Fax (602) 200-0106
E-mail: david@cb-attorneys.com
aaron@cb-attorneys.com
kelsey@cb-attorneys.com
David J. Cantelme, ASB No. 006313
D. Aaron Brown, ASB No. 022133
Kelsey G. Spillers, ASB No. 033931
Attorneys for Proposed Intervenor
Defendants Speaker of the Arizona
House of Representatives and President
of the Arizona Senate

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Miracle; et al., <br><br> Plaintiffs, <br><br> v. <br><br> Katie Hobbs, in her official capacity as Arizona Secretary of State, <br><br> Defendant. | Case No.: 2:19-cv-04694-SRB <br><br> **REPLY OF SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES AND PRESIDENT OF THE ARIZONA SENATE TO SECRETARY OF STATE HOBBS REGARDING THEIR PROPOSED INTERVENTION** |

Proposed Intervenor Defendants Speaker of the Arizona House of Representatives and President of the Arizona Senate reply herein to the response filed by the Arizona Secretary of State to their motion to intervene:

**1.    The Secretary Is Not a Proper Party.**

The Secretary is not a proper party to this lawsuit, because Arizona law confers no duties on her to enforce A.R.S. § 19-118(E).[1] Thus, the only proper defendant is the State of Arizona, but Plaintiffs failed to name it as a defendant, presumably because that would have forced them to file the action in state court under the Eleventh Amendment.

The only role A.R.S. § 19-118(E) assigns to the Secretary is to follow the order of a court. In this respect, Subsection E provides, "The party serving the subpoena may request an order from the court directing the secretary of state to remove any signatures collected by the circulator as provided for in § 19-121.01, subsection A." Thus, what Plaintiffs really want from this Court is an order compelling the Secretary in advance not to follow the order of an Arizona court. What's more, Subsection G specifically provides that the "removal or disqualification of any one or more circulators does not invalidate the random sample of signatures made pursuant to § 19-121.01, and the secretary of state shall not be required to conduct any additional random sampling of signatures."

The Secretary has no inherent duty of enforcing Arizona election laws. ARIZ.CONST. art. 5, § 9, creates the office of Secretary of State, but confers no duties on it, and assigns the Legislature the job of determining its duties. As the Attorney General wrote, "Ariz. Const. art. V, § 9 provides that the powers and duties of the Secretary of State 'shall be as prescribed by law.' The term 'law' as used in this provision means 'statute' . . . ." ARIZ.ATTY.GEN. OP. No. I89-011, 1989 WL 407501 (Jan. 30, 1989).

Turning to the duties actually conferred on her by law, A.R.S. § 19-121 tells the promoters of an initiative how to file their petitions with the Secretary's office, and

---

[1] When Plaintiffs filed this action, what is now subsection E of A.R.S. § 19-118 was codified at subsection C. In 2019 ARIZ.SESS.LAWS (54th Leg., 1st Reg.Sess.) Ch. 315, § 3, the Legislature amended A.R.S. § 19-118, effective August 27, 2019, to add provisions to this law, which resulted in re-lettering of the subsections. In this reply, we follow the re-lettering.

2

1   A.R.S. § 19-121.01 tells her what to do with them once filed. In short, Subsection A of
2   § 19-121.01 commands her first to cull out whole petitions that are defective for any of
3   the enumerated reasons, and second to cull out signatures defective on the face of the
4   petitions -- for example signatures missing an address or a date. If the remainder exceeds
5   the constitutional minimum, Subsection B commands her to draw out a random sample
6   of five percent of the remaining signatures and forward the sample to the county
7   recorders. A.R.S. § 19-121.02 commands the county recorders to check the individual
8   signatures and certify to the Secretary the number of valid signatures on the samples sent
9   to them. Under A.R.S. § 19-121.04, the Secretary takes the total number of signatures
10  submitted to her and subtracts from that number (a) the signatures removed as a result of
11  her initial culling out, and (b) the projected number of invalid signatures based on the
12  county-recorder random-sample certifications. If the remainder exceeds the
13  constitutional minimum, she certifies the result to the Governor and that she will place
14  the measure on the general-election ballot.

15      Nowhere in this process does she remove signatures or petitions based on the
16  failure of a circulator to appear in court under Subsection E of A.R.S. § 19-118. A state
17  court can order her under Subsection E to do so from her initial review under A.R.S. §
18  19-121.0(A), but, as noted above, Subsection G provides that such removal of signatures
19  or petitions "does not invalidate the random sample of signatures made pursuant to § 19-
20  121.01 . . ." Further, "the secretary of state shall not be required to conduct any additional
21  random sampling of signatures."

22      Thus, the Secretary has no duties under A.R.S. § 19-118 or other Arizona law to
23  enforce Subsection E of A.R.S. § 19-118, and she is commanded by Subsection G not to
24  conduct any further random samplings. The most she does is to follow a court order
25  issued under Subsection E as a result of the failure of a circulator to appear.

26

The Secretary attached an order issued in *Democratic National Committee et al. v. Arizona Secretary of State's Office et al.*, No. CV-16-01065-PHX-DLR (March 3, 2017), as Exhibit 1 to her response, but it lends her no support in this case. The issue there was "ballot harvesting," and the law in question, contrary to Subsection E in this case, did assign enforcement duties to her:

> Nonetheless, the actions of the Secretary and her office in connection with this case suggest that she might have some involvement in implementing the law. For example, after the Supreme Court stayed the *en banc* Ninth Circuit's order effectively enjoining H.B. 2023 pending *en banc* review, the Secretary's office issued guidance that third-party collectors who collected early ballots during the brief period during which it was legal to do so could deliver those ballots to the appropriate county officials by the following Monday and "there'd be no problem." (Doc. 256-1 at 5-6.) Likewise, Election Director Eric Spencer emailed county elections officials directing them to "accept all early ballots turned into them, regardless of who returns those ballots or how many ballots were collected during the brief 18-hour window this practice was deemed legal[.]" (*Id.* at 2.) According to news reports, the Attorney General's office deferred to the Secretary's direction on this issue. (*Id.* at 6.) Because it appears, at least at this stage, that the Secretary might have a role in implementing H.B. 2023, the Court declines to dismiss her from Plaintiffs' H.B. 2023claims at this juncture.

Order at 10:11-25.

The Secretary's duty to follow a court order issued under Subsection E is not enough to make her a proper party to this action. The Ninth Circuit has devised the following test to determine whether a state officer has sufficient powers under state law to place the officer within the *Ex Parte Young*[2] exception to the Eleventh Amendment:

> Under *Ex Parte Young,* the state officer sued must have some connection with the enforcement of the allegedly unconstitutional act. This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.")

---

[2] 209 U.S. 123 (1908).

*Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (internal brackets, quotation marks, and citation omitted.)

As shown above, the Secretary does not have even generalized duties for enforcement of Subsection E, which had they existed still would have been found wanting under *Eu*. She merely obeys a court order, which leads us back to our initial point: What Plaintiffs really want is for this Court to command her not to obey a state-court order.

**2.     The Secretary Proves Our Point.**

Though stating she is neutral regarding the motion to intervene, the Secretary has contested two principal arguments made by the motion. The first was whether she was a proper party, the issue dealt with in the foregoing. The second was whether she will be a true adversary to Plaintiffs in this action and will provide an adequate defense of Subsection E. In this respect, we note that she filed a motion to dismiss ably advancing the arguments made in it, but declined to advance the argument that she is not a proper party. In her present response, she opposed the argument and claims she is a proper party. Thus, her defense was incomplete.

What's more, she faulted the Speaker and President for attaching a proposed answer to their motion to intervene. The Speaker and President had no choice but to do so. Rule 24(c), F.R.Civ.P., required the Speaker and President to accompany their motion with "a pleading that sets out the claim or defense for which intervention is sought." Rule 7 defines the meaning of "pleading." An answer falls within the definition. A motion to dismiss does not. The Speaker and President note that they would look on filing a motion to dismiss fondly, but they can only do so once intervention is granted.

**3.     Conclusion.**

The Court should reject the Secretary's two reasons for opposing the motion to intervene as improvident, and instead should accept her avowal of neutrality on the motion.

RESPECTFULLY SUBMITTED on September 6, 2019.

**CANTELME & BROWN, P.L.C.**

/s/      David J. Cantelme, SBN 006313
2020 S. McClintock Drive, Suite 109
Tempe, Arizona 85282
*Attorneys for Proposed Intervenor Defendants Speaker of the Arizona House of Representatives and President of the Arizona Senate*

The foregoing was electronically filed on September 6, 2019, with the Clerk of the Court, using the CM/ECF System

Service through ECF and courtesy copy by electronic mail the same date to:

Sarah R. Gonski, Esq.
**PERKINS COIE LLP**
2901 N. Central Ave., Suite 2000
Phoenix, Arizona 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
SGonski@perkinscoie.com

Elizabeth C. Frost, Esq.
Uzoma N. Nkwonta, Esq.
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
EFrost@perkinscoie.com
UNkwonta@perkinscoie.com
*Attorneys for all Plaintiffs*

**MARK BRNOVICH,
ARIZONA ATTORNEY GENERAL**
Joseph E. La Rue, Esq.
Kara Karlson, Esq.
Assistant Attorneys General

6

2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-4951
Facsimile: (602) 542-4385
joseph.larue@azag.gov
kara.karlson@azag.gov
*Attorneys for Defendant Arizona Secretary of State Hobbs*

/s/      Lynn Marble