**CANTELME & BROWN, P.L.C.**
A Professional Liability Company
2020 S. McClintock Drive, Suite 109
Tempe, Arizona 85282
Tel (602) 200-0104   Fax (602) 200-0106
E-mail:  david@cb-attorneys.com
aaron@cb-attorneys.com
kelsey@cb-attorneys.com
David J. Cantelme, ASB No. 006313
D. Aaron Brown, ASB No. 022133
Kelsey G. Spillers, ASB No. 033931
Attorneys for Proposed Intervenor
Defendants Speaker of the Arizona
House of Representatives and President
of the Arizona Senate

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Miracle; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Arizona Secretary of State,<br><br>Defendant. | Case No.: 2:19-cv-04694-SRB<br><br>**AMICUS BRIEF OF THE SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES AND PRESIDENT OF THE ARIZONA SENATE** |

**TABLE OF CONTENTS**

Authority to File an Amicus Brief ……………………………………………………… 1

1.  The Court Lacks Subject Matter Jurisdiction for Lack of Injury-in-Fact and Causation…………………………………………………………..………… 1

2.  Good Reason Exists to Distinguish between Candidate-Petition Requirements and Initiative-Petition Requirements ……….…………………………..……….. 6

Conclusion ………………………………………………………………………………… 9

Service Certificate ……………………………………………………………………… 9-10

# TABLE OF AUTHORITIES

**CASES**:

*Arret v. Brower*, 237 Ariz. 74 (App. 2015) ……………………………………….. 2

*Bertelson v. Sacks Tierney, P.A.*, 204 Ariz. 124 (App. 2002) ……………...…………… 3

*Brousseau v. Fitzgerald*, 138 Ariz. 453 (1984) …………………………………………. 2

*Stanwitz v. Reagan*, 245 Ariz. 344 (2018) ………………………………..………… 1, 2, 3

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ……………………. 5

*Transportation Infrastructure Moving Arizona's Economy v. Brewer*,
    219 Ariz. 207 (2008) …………………………………………………………….. 2

*Western Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426 (1991) ………………………. 2


**ARIZONA CONSTITUTION AND LAWS**:

ARIZ.CONST. art. 4, pt. 1, §§ 1(6)(B) and 1(6)(C) …………………………………….. 8

ARIZ.CONST. art. 4, pt. 1, § 1(9) …………………………………….……………………. 2

A.R.S. § 19-118 …………………………………………………………….….… 1, 2, 3, 4, 5, 9

2019 ARIZ. SESS. LAWS (54th Leg., 1st Reg.Sess.) Ch. 315, § 3 ………………………….. 1


**ARIZONA RULES OF CIVIL PROCEDURE:**

Rule 11 …………………………………………………………………………………… 3, 4

Rule 16 ………………………………………………………………………………………… 4

Rule 43 ………………………………………………………………………………………… 4

Rule 45 ………………………………………………………………………………………… 4


**OTHER CITATIONS:**

James Madison, THE FEDERALIST PAPERS at 320 (Clinton Rossiter ed., 1961) ………. 6

Learned Hand, "*I am an American Speech*," *reprinted in* William Safire, LEND ME
    YOUR EARS: GREAT SPEECHES IN HISTORY at 63 (1992) ………………………. 8

# AUTHORITY TO FILE AN AMICUS BRIEF

Pursuant to leave granted by the Court in the order filed September 20, 2019, the Speaker of the Arizona House of Representatives and President of the Arizona Senate submit the following amicus brief:

1. **THE COURT LACKS SUBJECT MATTER JURISDICTION FOR LACK OF INJURY-IN-FACT AND CAUSATION.**

The injuries Plaintiffs complain of – taken as true for analysis – do not come from A.R.S. § 19-118(E). If they come at all, they come from state trial-court mismanagement of a case filed challenging initiative petitions. We know it is possible for an Arizona trial court to manage an initiative-petition challenge case invoking the remedy provided in A.R.S. § 19-118(E) without the sting Plaintiffs claim they will suffer in the future, because such was the case in *Stanwitz v. Reagan*, 245 Ariz. 344 (2018). As the Arizona Supreme Court noted in that case,

> Further, the Committee's suggestion that it was unduly burdened by Petitioners' subpoenas to circulators is unpersuasive. Petitioners subpoenaed only fifteen circulators to testify—fewer than one percent (0.6%) of the Committee's petition circulators—and the Committee received notice of the subpoenas eleven days before the evidentiary hearing. Section 19-118(C)'s application here demonstrates, rather than refutes, the constitutional application of the statute's disqualification remedy.[1]

*Id.* at 350, ¶ 24.

In general, initiative-petition challenge cases have inherent case-management difficulties. They stem from the acute compression of the schedule for processing such cases in the state court system. Such compression results from the practical deadlines imposed by the need to print the ballots, a compression that in recent years has been

---

[1] The Arizona Supreme Court cited to A.R.S. § 19-118(C), which in its last session the Arizona Legislature re-codified to A.R.S. § 19-118(E). *See* 2019 ARIZ. SESS. LAWS (54th Leg., 1st Reg.Sess.) Ch. 315, § 3.

1

exacerbated by the constrictions caused by early balloting, and the need to mail out ballots to Arizonans serving in the military and naval forces overseas.

To manage such time constrictions, the Legislature has set strict time limits for filing such cases, bringing them to trial, and appealing them directly to the Arizona Supreme Court. *See*, *e.g.*, *Transportation Infrastructure Moving Arizona's Economy v. Brewer*, 219 Ariz. 207 (2008) (describing the time constrictions and deadlines).

The role of circulators is often central to such cases. In *Stanwitz*, the Arizona Supreme Court described such centrality as follows:

> To provide context for the Committee's constitutional challenge, we note that the Arizona Constitution specifically envisions a signature verification requirement, Ariz. Const. art. 4, pt. 1, § 1(9), and this Court has observed that "[t]he circulator is the only person in the process who is required to make a sworn statement and is, therefore, the person under the greatest compulsion to lend credibility to the process." *W. Devcor*, 168 Ariz. at 432, 814 P.2d at 773. Consequently, because the integrity of the signature collection process is singularly dependent on the probity of circulators, "statutory circulation procedures" are critical "to reduce the number of erroneous signatures, guard against misrepresentations, and confirm that signatures were obtained according to law." *Brousseau v. Fitzgerald*, 138 Ariz. 453, 456, 675 P.2d 713, 716 (1984) (discussing candidate nominating petitions); *cf. Arrett v. Bower*, 237 Ariz. 74, 79 ¶ 17, 345 P.3d 129, 134 (App. 2015)(concluding that a petition serial number requirement was "critical" to ensuring the integrity of the referendum process).

245 Ariz. at 349, ¶ 18.

To ensure that a circulator appears at the trial of an initiative-petition challenge case, the Legislature adopted A.R.S. § 19-118, which sets forth the following procedures for registration of circulators, consent to jurisdiction, and service of process on them:

> Section 19-118(A) provides that "[a]ll circulators who are not residents of this state and, for statewide ballot measures only, all paid circulators must register as circulators with the secretary of state before circulating petitions pursuant to this title." Section 19-118(B)(1) requires that the circulator consent to the jurisdiction of Arizona courts "in resolving any disputes concerning the circulation of petitions by that circulator," and § 19-

> 118(B)(2) mandates that the circulator designate an Arizona address "at which the circulator will accept service of process related to disputes concerning circulation of that circulator's petitions." "Service of process is effected under this section by delivering a copy of the subpoena to that person individually or by leaving a copy of the subpoena at the address designated by the circulator with a person of suitable age." § 19-118(B)(2). Thus, § 19-118, which requires certain circulators to register before gathering signatures for ballot measures and creates a cause of action to challenge the eligibility of petition circulators, is an exercise of legislative authority to regulate the ballot measure process.

*Stanwitz*, 245 Ariz. at 348-49, ¶ 15.

It is critical to note that a plaintiff in an initiative-petition challenge case thus has a right to compel out-of-state and paid circulators to appear and testify at trial, regardless of whether the remedy for non-compliance is contempt or the disqualification of petition sheets wrought by A.R.S. § 19-118(E).

A.R.S. § 19-118(E) did not repeal the Arizona Rules of Civil Procedure, nor could it do so under the separation of powers doctrine embedded in Article III of the Arizona Constitution. *See Bertelson v. Sacks Tierney, P.A.*, 204 Ariz. 124, 129, ¶¶ 21-22 (App. 2002) ("The legislature may not enact a statutory rule that conflict[s with] or ... tends to engulf a general rule . . . adopted by the court pursuant to its exclusive power to make [procedural] rules.")(internal quotation marks omitted.)

The Rules provide an Arizona trial judge with a number of procedural devices to manage an initiative-petition challenge case, and prevent abuse. The first, and most prominent, is Rule 11, which requires the signature of a plaintiff's counsel on all pleadings and filings made in the case. Under Rule 11(b), counsel's signature represents the following to the trial court:

> By signing a pleading, motion, or other document, the attorney or party certifies that to the best of the person's knowledge, information, and belief formed after reasonable inquiry:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

3

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(b) thus creates an effective tool to prevent abuse of the system, but by no means is it the only tool found in the Arizona Rules of Civil Procedure. Rule 45(e) provides for a motion to quash a burdensome subpoena. Rule 43(e) allows a witness to testify by telephone with trial-court approval. Rule 16(d) gives the trial court enormous powers to manage and streamline a case, including the power to eliminate non-meritorious claims or defenses. There also is the possibility of an unclean hands defense against a plaintiff who abused the subpoena power.

All of the burdens Plaintiffs complain of thus stem from poor case management. They do not stem from the remedy provided by A.R.S. § 19-118(E). Otherwise, we would have to suppose that a circulator who might be tempted to disobey a lawful subpoena, not appear, and accept the risk of contempt, would feel more compulsion to appear if the remedy were enhanced beyond mere contempt to disqualification of petition sheets. When stripped to its essence, that is really what Plaintiffs argue – that the Constitution prevents the Legislature from enhancing the penalty for a circulator's non-appearance from contempt to disqualification of petition sheets. The duties to register, appoint a place for service, and appear at trial all exist regardless of the strength of the sanction for non-appearance, and the burdens resulting from poor case management also would continue to exist regardless of the strength of the sanction. We must assume a circulator will follow the law and appear regardless of whether the penalty for disobedience is large or small.

That leads us to basic Article III requirements for filing suit in federal court. One

of the most basic is injury-in-fact actually caused by the acts complained of. As the United States Supreme Court has described it,

> First and foremost, there must be alleged (and ultimately proved) an "injury in fact" —a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability[5] constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998) (internal citations omitted.)

Consideration of what would happen if this Court were to enjoin enforcement of the sanction provided by A.R.S. § 19-118(E) makes plain that this law's sanction actually causes none of the injuries Plaintiffs have complained about. To wit: If an injunction were issued suspending the sanction, a plaintiff in an initiative-petition challenge case would still have the right to subpoena circulators to appear at trial, and still could subpoena as many as were necessary to prove the case, the circulators would still have the obligation of appearing at trial, and they would incur all the burdens they complain of – whether fanciful or real – regardless of this Court's injunction. The only difference is that a plaintiff would have one less remedy for non-appearance. The remedy of contempt of court would still remain, and it would be enforceable because the circulators consented to jurisdiction and consented to service at the location they noticed in their registration. Thus, the circulator's duty to obey a lawful order of an Arizona court to appear and testify at trial would still remain fully intact. That is really what Plaintiffs complain about, but the United States Constitution works no interference with such duty.

## 2. GOOD REASON EXISTS TO DISTINGUISH BETWEEN CANDIDATE-PETITION REQUIREMENTS AND INITIATIVE-PETITION REQUIREMENTS.

At oral argument held last September 25, the Court noted a distinction between initiative-petitions and candidate-petitions that the Speaker and President want to develop further, because it aligns with their own experience. That is the permanence of initiated laws. Candidates are elected to a term. Initiated laws last until repealed by the electorate. The cases and authorities relating to this issue were developed in the briefing, and analyzed at oral argument. We do not revisit their technicalities or applications. We develop here a policy distinction, one that we find compelling.

The concept of checks-and-balances illustrates this compelling distinction between candidate-petitions and initiative-petitions. As Madison wrote in the first paragraph of Federalist No. 51,

> To what expedient, then, shall we finally resort, for maintaining in practice the necessary partition of power among the several departments, as laid down in the Constitution? The only answer that can be given is, that as all these exterior provisions are found to be inadequate, the defect must be supplied, by so contriving the interior structure of the government as that its several constituent parts may, by their mutual relations, be the means of keeping each other in their proper places.

James Madison, THE FEDERALIST PAPERS at 320 (Clinton Rossiter ed., 1961).

If the electorate makes a mistake in the election of a candidate, the Arizona Constitution provides a number of checks and balances to ameliorate the mistake, ultimately including impeachment and removal from office, as was the case with Governor Mecham. What's more, the exercise of power is diffused in the Arizona Constitution. A state senator is one of 30, and a state representative one of 60. The nomination and subsequent election of a state legislator is far from itself a change in law, much less a voter-protected one. Once elected, that legislator must draft and introduce a

6

bill, the presiding officer of the chamber must assign the bill to a committee, the sponsoring legislator must convince a committee chairman of the bill's merits in order for the bill to be agendized, a majority of a committee must support the bill, then a majority of the chamber's legislators must also support it. The same process must then occur in the opposite chamber. If unsuccessful at any point in this process, the legislation fails and no change in the law occurs. But even if successful through this process, the Governor must see the bill's merits and sign it for it to become law. Even after all this, the changed law is still subject to potential referendum and future amendment or repeal by a simple majority, and the law of course is subject to judicial review for constitutionality.

Turning to the executive branch, its powers are divided initially among the five main constitutional officers – governor, secretary of state, attorney general, treasurer, and public-instruction superintendent – and then the executive power is further fractured and distributed among numerous state boards and commissions; for example, to the Board of Regents, the State Board of Education, the Board of Pardons and Paroles, the Game and Fish Commission, the Transportation Board, and so on.

Thus, the concern about access to the ballot is not as acute when it comes to candidates for the Legislature or the executive branch, because the effect of a mistake is not as sharp, and many remedies exist to check it or to limit the damage resulting from a poor choice.

The initiative power is different. As the Court noted, once exercised, the results are permanent – or at least remain on the books and are enforced until a later electorate repeals or amends to correct an error. Apart from the electorate, the only check is judicial review, and that of course is limited to constitutionality and does not concern itself with the wisdom or effectiveness of a law or correction of what experience might prove to be policy mistakes. The Legislature has no power to repeal an initiated law, and only limited power to amend it to further its purposes, which must be passed by a three-fourths

majority roll-call vote in both Houses.  ARIZ.CONST. art. 4, pt. 1, §§ 1(6)(B) and 1(6)(C).

The concern is not the people's reservation of the right to initiate laws – Legislators take an oath to uphold the Arizona Constitution, and anyone with even a passing knowledge of it realizes that the citizens of Arizona reserved the initiative power to themselves in art. 4, pt. 1, § 1, when they adopted the Arizona Constitution more than a hundred years ago.  We applaud that reservation.

Experience has shown, however, that an unwritten law exists in human affairs that no one can repeal -- that is the law of unintended consequences.  What seems right and proper by today's lights, future experience might prove to be disastrous.  History is replete with examples that need not be cited, because the truth of this law is so evident in actual experience.  This unwritten law does not hang from any ideological peg.  It hangs from human nature, and our condition of being able to peer only dimly into the future.

This unwritten law thus cautions that the power of initiative be exercised prudently and carefully, for the remedy for mistake is clumsy at best, if it exists at all.  It provides a sensible reason to distinguish between candidate-petitions and initiative-petitions.  It shows a healthy respect for the enormity and permanence of the power to be exercised, and a recognition of a certain pragmatism in human affairs concerning the inherent limitations resulting from the unforeseeability of consequences.  This distinction does not evince a hostility to the reservation of power to the people to initiate laws.  Rather, it aligns with Judge Learned Hand's concept of the spirit of American liberty, which is one that is "not too sure that it is right . . . which seeks to understand the mind of other men and women; . . . [and] which weighs their interests alongside its own without bias . . . ."[2]

---

[2] Learned Hand, "*I am an American Speech*," given at New York, New York, on May 20, 1945, *reprinted in* William Safire, LEND ME YOUR EARS: GREAT SPEECHES IN HISTORY at 63 (1992).

8

**3.      CONCLUSION.**

A.R.S. § 19-118(E) does not cause the injuries complained of, if they are genuine and can be proven. Such injuries, if real, are caused by poor trial-court case management. Without an injury in fact resulting from the statute the enforcement of which Plaintiffs seek to enjoin, this Court – as an Article III court – does not have subject-matter jurisdiction to hear the lawsuit. Experience has shown good grounds for distinguishing between candidate-petitions and initiative-petitions. The checks and balances that exist for the former do not exist for the latter, and initiated laws are permanent, save for modification or repeal by the electorate itself.

RESPECTFULLY SUBMITTED on October 7, 2019.

**CANTELME & BROWN, P.L.C.**

/s/      David J. Cantelme, SBN 006313
2020 S. McClintock Drive, Suite 109
Tempe, Arizona 85282
*Attorneys for Proposed Intervenor Defendants Speaker of the Arizona House of Representatives and President of the Arizona Senate*

The foregoing was electronically filed on
October 7, 2019, with the Clerk of
the Court using the CM/ECF System.

Service through ECF and courtesy copy by
Electronic mail the same date to:

Sarah R. Gonski, Esq.
**PERKINS COIE LLP**
2901 N. Central Ave., Suite 2000
Phoenix, Arizona 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
SGonski@perkinscoie.com

9

Elizabeth C. Frost, Esq.
Uzoma N. Nkwonta, Esq.
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
EFrost@perkinscoie.com
UNkwonta@perkinscoie.com
*Attorneys for all Plaintiffs*

**MARK BRNOVICH,
ARIZONA ATTORNEY GENERAL**
Joseph E. La Rue, Esq.
Kara Karlson, Esq.
Assistant Attorneys General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-4951
Facsimile: (602) 542-4385
joseph.larue@azag.gov
kara.karlson@azag.gov
*Attorneys for Defendant Arizona Secretary of State Hobbs*

/s/     Lynn Marble