# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Miracle, et al., | No. CV-19-04694-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Katie Hobbs, in her official capacity as Arizona Secretary of State | |
| Defendant. | |

The Court now considers Plaintiffs'[1] Motion for Preliminary Injunction (Doc. 9 ("MPI")) and Defendant Katie Hobbs ("Defendant")'s Motion to Dismiss (Doc. 16 ("MTD")). Because Plaintiffs' Motion for Preliminary Injunction and Defendant's Motion to Dismiss contain overlapping factual allegations and arguments, the Court considers them together.

**I.    BACKGROUND**

   **A.    Factual Background**

The background of this case was summarized in the Court's Order dated September 20, 2019, and is incorporated herein:

> The Arizona Constitution confers the right to initiative upon its

---

[1] Plaintiffs Jessica Miracle, Rose Smallcanyon, Czaria Lord, Lonnie Arrington, Mendon Dornbrook, Mary Katz, NextGen Climate Action ("NextGen"), and Arizonans for Fair Lending ("AFL") are collectively referred to as "Plaintiffs." (Doc. 1, Compl. at 1.) "Plaintiffs are petition signers, circulators, sponsors, and initiative proponents," each of whom allege that the Strikeout Law has restricted or denied their ability to meaningfully participate in the initiative process. (*Id.* ¶ 7.)

>citizens. Ariz. Const. art IV, pt. 1 § 1. This case concerns the constitutionality of A.R.S. § 19-118(E) (the "Strikeout Law"), which Plaintiffs believe impermissibly burdens that right. (*See* Doc. 1, Compl. at 1; i*d.* ¶ 4.) The Strikeout Law requires Defendant Arizona Secretary of State ("Defendant") to strike all signatures gathered by an initiative petition circulator if the circulator is subpoenaed to provide evidence in an action regarding petition circulation and fails to appear in court or produce the required documents. A.R.S. § 19-118(E); (*see* Compl. ¶ 1). On July 11, 2019, Plaintiffs filed their Complaint, seeking declaratory and injunctive relief against Defendant. (*See* Compl.) According to Plaintiffs, "[t]he Strikeout Law abridges and denies [the] core constitutional rights of political speech and association, along with the right to vote or participate meaningfully in the political process," thereby violating the First and Fourteenth Amendments of the U.S. Constitution. (*Id.* ¶ 1; *see id.* ¶¶ 79–119.) Plaintiffs argue that "[t]he right to initiative is ingrained in the very core of Arizonans' political rights," and the Strikeout Law improperly conditions the validity of an initiative on the individual circulator's ability to comply with a subpoena. (*See id*. ¶¶ 2, 5.)

(Doc. 27, 09/20/19 Order at 1–2 (footnotes omitted).)

### B. Procedural Background

Plaintiffs filed a Motion for Preliminary Injunction on July 18, 2019. (*See* MPI.) Defendant filed her Response on August 23. (*See* Doc. 17, Def.'s Resp. Opposing Pls.' MPI ("MPI Resp.").) Also on August 23, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* MTD; *id.* at 1.) Plaintiffs filed their Response on September 6. (*See* Doc. 22, Pls.' Resp. in Opp'n to Def.'s MTD ("MTD Resp").) The Court heard oral argument on Plaintiffs' Motion for Preliminary Injunction and Defendant's Motion to Dismiss on September 25. (*See* Doc. 28, Minute Entry.)

## II. MOTION TO DISMISS

### A. Legal Standard

Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th

Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Nevertheless, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

### B.  Analysis

#### 1.  First Amendment Claim

Citing *Meyer v. Grant*[2] and *Buckley v. American Constitutional Law Foundation, Inc.*,[3] Plaintiffs argue that since circulation of initiative petitions constitutes "core political speech," the Strikeout Law violates the First Amendment. (*See* MPI at 7–9.) Urging the application of strict scrutiny, Plaintiffs maintain that the State must prove that the Strikeout Law "furthers a compelling interest and is narrowly tailored to achieve that interest." (*Id.* at 8.) Defendant, however, contends that because the Strikeout Law does not regulate "circulation or advocacy," it does not implicate the First Amendment. (MTD at 8.) Defendant emphasizes that First Amendment jurisprudence "recognizes a crucial distinction" between laws that regulate the communicative conduct of persons advocating a particular message and laws that regulate the procedures by which legislation is enacted. (*Id.*) The Strikeout Law, per Defendant, falls into the latter category. Unlike the laws at issue in *Meyer* and *Buckley*, which restricted the communicative conduct of petition circulators, Defendant maintains that the Strikeout Law regulates only non-communicative conduct. (*See id.* at 9.) The Court considers both *Meyer* and *Buckley* in its initial determination of whether the Strikeout Law implicates the First Amendment.

The Colorado statute at issue in *Meyer* permitted a "proposed state constitutional

---
[2] 486 U.S. 414 (1988).
[3] 525 U.S. 182 (1999).

amendment to be placed on a general election ballot if its proponents [] obtain[ed] the signatures of at least five percent of the total number of qualified voters on an 'initiative petition' within a 6-month period, but [made] it a felony to pay petition circulators." 486 U.S. at 414 (1988). The Supreme Court held that the statutory prohibition against paid circulators violated the First and Fourteenth Amendments because it restricted "access to the most effective, fundamental, and perhaps economical avenue of political discourse, direct one-on-one communication." *Id.* at 424. In so holding, the Supreme Court concluded that such petition circulation constituted "'core political speech' because it involves 'interactive communication concerning political change.'" *Buckley*, 525 U.S. at 186 (quoting *Meyer*, 486 F.3d at 422). The Supreme Court rejected the state's claim that the prohibition was justified by its interest in ensuring that an initiative had sufficient grassroots support to make it on to the ballot, and noted that existing provisions adequately addressed the risk of improper conduct in petition circulation. *Meyer*, 486 F.3d at 427.

In *Buckley*, the Supreme Court upheld the Tenth Circuit's invalidation of three Colorado petition-circulation laws. First, the Supreme Court held that a requirement that petition circulators be registered voters drastically reduced the number of individuals available to circulate petitions, resulting in an impermissible speech diminution akin to *Meyers*. *See Buckley*, 525 at 194–95. Second, the Supreme Court held that the "badge requirement" for paid petition circulators was invalid insofar as the requirement compelled circulators to display their names. *See id.* at 197–200. Colorado's interest in identifying petitioners who engaged in misconduct was adequately addressed by existing laws requiring circulators to disclose their names and addresses on affidavits submitted alongside petition sections. *See id.* at 198. Finally, the Supreme Court upheld the invalidation of a requirement that ballot-initiative proponents file a final report upon submission of a petition insofar as that report demanded disclosure of each paid circulator's name, address, and total compensation.[4] *See id.* at 201–04.

In both *Meyer* and *Buckley*, the statutes at issue regulated the communicative

---

[4] *Buckley* upheld the Tenth Circuit's invalidation of similar monthly reporting requirements. *See* 525 U.S. at 201–04.

conduct of petition circulators. Plaintiffs claim that the Strikeout Law does the same, in three ways. First, the law shrinks the pool of prospective circulators, thereby "limiting the overall quantum of political speech." (MPI at 9.) Second, the law reduces the ability of initiative proponents to gather the requisite number of signatures for ballot access for reasons unrelated to actual voter support. (*Id.* at 10.) Third, the law "impermissibly regulates speech based on the content of the speech and the identity of the speaker." (*Id.*) The Court considers each argument in turn.

### a. Impact on the Pool of Potential Circulators

Plaintiffs argue that the Strikeout Law restricts the pool of potential circulators because initiative proponents must either recruit volunteer circulators, or only hire those paid circulators who can guarantee future compliance with a potential subpoena. (*See id.* at 9.) Initiative proponents are therefore reluctant to recruit paid circulators from outside the Phoenix metro area. (*Id.*) Plaintiffs emphasize that "[c]ourts have repeatedly found laws with similar consequences unconstitutional," citing *Chandler v. City of Arvada, Colorado*,[5] *Nader v. Brewer*,[6] and *Buckley* in support. (*Id.* at 9–10.) Defendant does not distinguish *Chandler* or *Nader*, but does distinguish *Buckley*, arguing that unlike the Strikeout Law, the law at issue in *Buckley* implicated the First Amendment because it significantly hindered communication with voters by compelling paid petition circulators to display their names. (*See* MTD at 9.) According to Defendant, the Strikeout Law does not violate the First Amendment because paid initiative-petition circulators remain free to engage in protected political speech. (*Id.*)

And although Defendant concedes that "all regulations of petition circulators potentially reduce the pool of available circulators," she argues that the most relevant question is the severity of the burden. (MTD at 11.) She claims that the Strikeout Law is

---

[5] 292 F.3d 1236 (10th Cir. 2002) (holding that city ordinance prohibiting non-residents from circulating certain petitions violated First Amendment because ordinance reduced pool of eligible circulators and limited political discussion).
[6] 531 F.3d 1028 (9th Cir. 2008) (holding that law requiring petition circulators for independent candidates to be qualified to register to vote as state residents twenty-nine days before election violated First Amendment rights of nonresident supporters of independent candidates).

- 5 -

not so severe as to trigger strict scrutiny. (*Id.*) Defendant cites *Prete v. Bradbury*,[7] wherein the Ninth Circuit determined that an Oregon constitutional provision that banned paying circulators on a per-signature basis imposed "a lesser burden" on political speech, and only needed to be reasonably related to an important state interest. *See* 438 F.3d at 963–65. Here, Defendant argues that the State retains an important "interest in protecting the integrity of the initiative by administering an honest and fair initiative procedure," which is "directly advanced by incentivizing circulators' subpoena compliance." (MTD at 11–12.) And that the Strikeout Law is "reasonably directed at initiative-petition circulators because initiatives, once enacted, are nearly impossible to undo." (*Id.* at 12.)

The Court agrees with Defendant. The Strikeout Law is distinct from the laws at issue in *Buckley*, *Meyer*, *Chandler* and *Nader* because the laws at issue in those cases implicated the communicative message associated with the physical act of circulation *at the time of circulation*. In *Meyer*, the criminalization of paid circulators restricted political expression in two ways. First, the law reduced the number of people conveying the message, the hours they could work, and the audience they could reach. *See* 486 F.3d at 422–23. Second, the law reduced the likelihood that a proposed measure might make it on to the ballot, thereby limiting potential statewide discussion related to the measure. *See id.* at 423. The Strikeout Law, conversely, does not implicate the physical act of circulation *at the time of circulation* because it applies to subpoena-related compliance that comes into play only *after* all initiative-related speech has occurred. (*See* MTD at 8.) The law does not reduce the pool of potential circulators in a manner that impacts the communicative conduct of the petition circulator; and significantly, there is insufficient evidence of a "chilling" effect.[8] The Court concludes that the Strikeout Law does not violate the First Amendment with respect to its impact on the pool of potential circulators.

---

[7] 438 F.3d 949 (9th Cir. 2006).
[8] Plaintiffs' argument that Plaintiff Miracle "declined a job circulating nomination petitions for a mayoral candidate who she personally supports," because she mistakenly thought that the Strikeout Law applied to nomination petitions is unpersuasive. (MPI at 9 n.8.) Such a mistake cannot be attributed to the Strikeout Law, which plainly does not reach nomination petitions. *See* A.R.S. § 19-118(E); *see also* A.R.S. § 19-118(A) (stating that requirement applies to "statewide initiative and referendum measures only").

### b. Impact on Signature Collection

Plaintiffs argue that the Strikeout Law "significantly burdens the ability of initiative proponents to gather the number of signatures necessary for ballot access," because it compels proponents to gather a number "above and beyond" the minimum constitutional threshold. (MPI at 10.) Christopher Gallaway, co-owner of Fieldworks, a company that develops and manages programs for electoral campaigns, corporations, issue-based organizations, and ballot initiatives, testified that due to the Strikeout Law, Fieldworks' signature target has increased to "25% or even 30%." (Doc. 9-5, Ex. 4, Decl. of Christopher Gallaway ¶¶ 2, 28.) Prior to realizing the "full effects of the Strikeout Law," Fieldworks aimed at collecting 5% more than the minimum threshold. (*Id.* ¶ 28.) Plaintiffs contend that the "restricted pool of circulators," coupled with "artificially inflated signature-gathering efforts," increase the odds that proponents will fail to secure ballot access for reasons unrelated to voter support for their measure(s). (MPI at 10.) Relying again on *Meyer*, Plaintiffs argue that failure to secure ballot access for a measure would limit their ability to make the measure the topic of statewide conversation. (*See id.*)

Defendant responds that the threat of signature disqualification does not violate the First Amendment, citing multiple cases where courts upheld signature disqualification provisions in support. (*See* MTD at 10.) While the Court does not find any of Defendant's citations particularly apt,[9] Plaintiffs' argument still suffers from a critical deficiency: the underdeveloped relationship between the Strikeout Law and the chilling of statewide conversation related to a potential ballot measure. Plaintiffs are correct that ballot-access measures like the Strikeout Law can restrict political speech; however, at this juncture, Plaintiffs have simply failed to show facts or circumstances demonstrating such a restrictive effect. (*See* Doc. 23, Pls.' Reply in Supp. of MPI ("MPI Reply") at 3.) The

---

[9] For example, in *Blankenship v. Blackwell*, the court declined to consider the First Amendment implications of an Ohio residency and registration requirement for circulators because the record was "replete with credible, unchallenged instances of actual fraud in the circulation of petitions." 341 F. Supp. 2d 911, 923–24 (S.D. Ohio 2004), *aff'd per curiam*, No. 04-4259, 2004 WL 2390113, at *1 (6th Cir. Oct. 18, 2004) (denying plaintiff-appellants' emergency motion for injunction and expedited appeal).

1   Strikeout Law pertains to subpoena compliance. It is only after the circulator "fails to
2   appear or produce documents as provided in the subpoena" that "all signatures collected
3   by that circulator are deemed invalid." A.R.S. § 19-118(E).

4   In the case of Plaintiff Smallcanyon, she gathered signatures for a single day and
5   collected only forty-three signatures. (Compl. ¶ 21.) It requires several leaps of faith to say
6   that if Plaintiff Smallcanyon (or a similarly-situated paid or out-of-state initiative-petition
7   circulator) was unable to comply with a subpoena, the invalidation of that relatively small
8   number of signatures would precipitate a measure's failure to make the ballot, which would
9   then chill statewide conversation concerning that measure. Under the Strikeout Law, the
10  State's subpoena power does not prompt automatic disqualification of a circulator's
11  signatures. *See* A.R.S. § 19-118(E). And, tellingly, Plaintiffs do not rebut this reality. The
12  Court concludes that the Strikeout Law does not violate the First Amendment with respect
13  to its impact on signature gathering.

### c. Regulation of Content & Speaker's Identity

15  Plaintiffs contend that the Strikeout Law is a content-based regulation that targets
16  speech based on its communicative content in violation of the First Amendment. (MPI at
17  10.) "Because it does not apply to those advocating for a candidate's nomination to public
18  office, the Strikeout Law is, on its face, a content-based restriction on political speech and
19  association." (*Id.* at 11.) Plaintiffs argue that in both instances—for nomination and
20  initiative petitions—"the circulator engages with voters, persuades them that a given
21  candidate or issue should appear on the ballot for the public to vote upon, and encourages
22  them to sign a petition to enable that access." (*Id.*) Plaintiffs further argue that "[e]ven
23  among circulators of initiative petitions, the law targets and restricts political speech based
24  on the residency and employment status of the speaker."[10] (*Id.*)

---

[10] Plaintiffs also argue that the Strikeout Law is not a necessary safeguard against fraud because it is both underinclusive and overbroad. (MPI at 12.) Because "it applies to paid or out-of-state initiative circulators, but not to in-state volunteer circulators or *any* circulators of nomination petitions," such under-inclusivity weakens the credibility of the State's argument. (*Id.*; *see id.* (citing *Sanders Cty. Republican Cent. Bank Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012).) And since the Supreme Court has already stated that it is unprepared to assume that a professional circulator is more likely to accept false signatures than a volunteer, the law is overbroad in that it reaches circulators even

Defendant does not dispute that the Strikeout Law treats nomination-petition and initiative-petition circulators differently. (*See* MTD at 12.) Instead, she emphasizes that "the law applies equally to all professional [i.e., paid] and out-of-state initiative-petition circulators, regardless of [] subject matter." (*Id.*) And, according to Defendant, the legislature properly limited the Strikeout Law to paid and out-of-state initiative-petition circulators because such circulators are "a more likely source of fraudulent signatures and more likely to need the additional incentive" to comply with a subpoena. (*Id.* at 13.) In that same vein, Defendant asserts that "the law is reasonably directed at initiative-petition circulators because initiatives, once enacted, are nearly impossible to undo." (*Id.* at 12; *see also id.* ("[Initiatives] cannot be vetoed by the governor, repealed by the legislature, or amended in a way that does not further the initiatives' purpose.").)

Defendant additionally reiterates her argument that the Strikeout Law is not a content-based regulation because it only relates to subpoena-related compliance *after* all initiative-related speech has occurred. (*See id.* at 15–16.) But such an argument is less effective in this context, not in the least because Defendant does not dispute that the law distinguishes between nomination-petition and initiative-petition circulators. And, as discussed during oral argument, such a distinction might have a chilling effect on the latter category.[11] It is undisputed that the Strikeout Law distinguishes between nomination-petition and initiative-petition circulators, and, as amongst initiative-petition circulators, targets only paid and out-of-state circulators. The Court therefore agrees that the Strikeout Law, in these two limited respects, may qualify as a content-based regulation that implicates that First Amendment.

"Content-based regulation of speech typically must be narrowly tailored to a

---

where there is no reason to suspect fraud. *Meyer*, 486 U.S. 426; (*see* MPI at 13). For the same reasons discussed below, the Court concludes that Plaintiffs have alleged facts that "plausibly" suggest a claim for relief with respect to their underinclusiveness and overbreadth arguments. *See* discussion *infra* pp. 11–12.

[11] During oral argument, Defendant's counsel argued that because the "law does not prevent anyone from circulating petitions," it cannot implicate the First Amendment. (Doc. 31, Rep.'s Tr. of Proceedings, Sep. 25, 2010 ("OA Tr.") at 38:8–9.) The Court responded: "[w]hat if it chills circulators? . . . Because the[re] will be a potential heavy burden on them if there's a challenge to the signature gathering process." (*Id.* at 38:11; 38:13–15.)

- 9 -

compelling state interest." *Buckley*, 525 U.S. at 209 (Thomas, J., concurring) (citing *Boos v. Barry*, 485 U.S. 312, 321 (1998)); *see also Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015) ("Content-based laws . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."). While Plaintiffs concede that the State retains a compelling interest in preventing election fraud, they challenge Defendant's claim that the "near permanency" of initiatives once passed constitutes a compelling interest. (MTD at 12 n.2; *see* MPI Reply at 4.) The Court agrees with Plaintiffs. The "near permanency" of an initiative once passed is more of a legal outcome than a compelling government interest justifying Defendant's chosen method of incentivizing subpoena compliance.

Plaintiffs further argue that Defendant has failed to demonstrate that the Strikeout Law is narrowly tailored to serve the State's interest in preventing election fraud. Such an interest, Plaintiffs argue, could be sufficiently addressed by regulations less harmful to their First Amendment interests. (*See* MPI at 12.) Plaintiffs may be right. However, at this early stage of litigation, the Court is unwilling to express "detailed views on the proper resolution of th[is] First Amendment question . . . without a fuller development of the disputed issues in the case." *City of Los Angeles v. Preferred Comm'ns, Inc.*, 476 U.S. 488, 495 (1986). The Court therefore concludes that Plaintiffs have "plausibly" alleged a claim for relief under the First Amendment with respect to the Strikeout Law's regulation of the communicative conduct of initiative-petition circulators, as well as the law's regulation of the speaker's identity. *Moss*, 572 F.3d at 969.

### 2. Fourteenth Amendment Claim

Plaintiffs contend that ballot initiatives such as the Strikeout Law "implicate the fundamental right to vote and are therefore subject to the guarantees of the Fourteenth Amendment." (MTD Resp. at 14.) Plaintiffs also contend that the Strikeout Law violates the Equal Protection Clause by treating "similarly-situated circulators differently" and thus "indiscriminately reject[ing] voters' signatures for reasons entirely unrelated to the voter

or the validity of their signature."[12] (Compl. ¶ 109; MTD Resp. at 14.) Plaintiffs maintain that these burdens are severe and must be evaluated under strict scrutiny. (*See* MPI at 15; *see also id.* at 16 ("[V]alid signatures from lawful voters across Arizona are being discarded solely because the circulator . . . [failed] to comply with an eleventh-hour subpoena—a circumstance wholly unrelated to the signature's validity or the circulator's eligibility.").) But even if these restrictions do not result in "severe" burdens, Plaintiffs argue that Defendant cannot meet the less stringent *Anderson-Burdick* standard, which states that ballot regulations imposing a lesser burden on speech rights still must be reasonably related to fulfilling a state's important regulatory interests, and requires an assessment of whether alternative methods would further those interests. (*See id.* at 16 (discussing *Soltysik v. Padilla*, 910 F.3d 438, 445 (9th Cir. 2018)).)

But the Arizona Supreme Court has already considered the question of whether the Strikeout Law "unduly hinders and restricts the legislative authority of the people through the initiative process and fails to reasonably supplement the purpose of the initiative process" in violation of the Arizona Constitution. *Stanwitz v. Reagan*, 429 P.2d 1138, 1143 (Ariz. 2018). And it has already decided those questions in the negative: "[w]e agree . . . that the statute 'represents a reasonable means of fostering transparency, facilitating the judicial fact-finding process, inducing compliance with valid compulsory process, and mitigating the threat of fraud or other wrongdoing infecting the petition process.'" *Id.* at 1144. The *Stanwitz* Court also emphasized that: (1) "the Arizona Constitution specifically envisions a signature verification requirement," and (2) the court had already expressed that the circulator—the sole person required to make a sworn statement—is "under the greatest compulsion to lend credibility to the process." *Id.* at 1143 (citation omitted); *id.* (quoting *W. Western Devcor, Inc. v. City of Scottsdale*, 814 P.2d 767, 773 (Ariz. 1991)).[13]

---

[12] Plaintiffs specifically allege that Plaintiffs Katz, Dornbrook, and Arrington affixed their signatures to initiative petitions as acts of political speech, and that their "otherwise valid signature[s] [were] rejected under the Strikeout Law." (MTD Resp. at 14 (citing Compl. ¶ 115).) Plaintiffs allege that the same is true for "other Arizona voters who signed petitions circulated by [AFL] and NextGen." (MTD Resp. at 14.)

[13] Furthermore, in August 2018, the Maricopa County Superior Court stated that far from burdening the right to vote, the Strikeout Law "provides an essential means of exposing signature fraud, thereby promoting integrity in the initiative and referendum process," and

Because the Arizona Supreme Court has already held that the Strikeout Law does not hinder or restrict the initiative process, this Court concludes that the Strikeout Law does not severely burden Plaintiffs' fundamental right to vote. Furthermore, this Court rejects Plaintiffs' equal protection claim, in part, due to Plaintiffs' halfhearted attempt to transfer their First Amendment "content-based restriction" argument to the equal protection context: "[t]he analysis in this section applies equally to Plaintiffs' Equal Protection claim." (MTD Resp. at 10 n.3.) As an initial matter, the Court observes that Plaintiffs have failed to allege that paid and out-of-state initiative-petition circulators constitute a suspect classification.[14] If the Court were to consider an equal protection claim concerning the Strikeout Law, the State would only need to provide a rational basis for the classification: "[u]nder rational-basis review, where a group possesses 'distinguishing characteristics relevant to interests the State has the authority to implement," a State's decision to act on the basis of those differences does not give rise to a constitutional violation." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366–67 (2001) (quotation and citation omitted). "[I]f there is a rational relationship between the disparity of treatment and some governmental purpose," such a classification will not violate the Equal Protection Clause. *Id.* at 367 (quotation and citation omitted). Here, the State has provided such a purpose: fraud prevention via subpoena compliance. (*See* MTD at 11–12, 17.) Plaintiffs nevertheless argue that the State can and does serve its fraud-prevention goals through less burdensome means. (MPI at 16.) Perhaps it can. But the law does not require it to do so. The Court concludes that the Strikeout Law does not violate the Fourteenth Amendment.

### C. Conclusion

The Court grants Defendant's Motion to Dismiss as it relates to Plaintiffs' First Amendment claims concerning the Strikeout Law's impact on signature collection and

---

"is precisely the kind of statute that the Constitution's framers envisioned when they directed the enactment of 'laws to secure the purity of elections and guard against abuses of the elective franchise.'" *Leach v. Reagan*, No. CV2018-009919, at *18 (Ariz. Super. Ct. Aug. 27, 2018).

[14] Plaintiffs allege that "Arizona's decision to apply the Strikeout Law unevenly among circulators based on residency, employment status, and the content of the petition . . . demonstrates that the law is not necessary to protect the integrity of the signature-gathering process." (Compl. ¶ 118.)

impact on the pool of circulators, as well as Plaintiffs' Fourteenth Amendment claims. The Court denies Defendant's Motion to Dismiss as it relates to Plaintiffs' First Amendment claim concerning the Strikeout Law's regulation of communicative content and the speaker's identity, as well as Plaintiffs' underinclusiveness and overbreadth arguments.

### III. PRELIMINARY INJUNCTION

#### A. Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). Employing a sliding-scale analysis, the Ninth Circuit has also stated that if a plaintiff can only show that there are "serious questions going to the merits," an injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the plaintiff satisfies the two remaining *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quotation and citation omitted); *see Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013). When the government is a party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). With respect to preliminary injunctions in the First Amendment context, "the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Sanders Cty.*, 698 F.3d at 744 (quotation and citation omitted).

#### B. Analysis

Because the Court has already ruled on Defendant's Motion to Dismiss, the Court only considers Plaintiffs' surviving First Amendment claim: whether the Strikeout Law "impermissibly regulates speech based on the content of the speech and the identity of the speaker." (*See* MPI at 10.) Additionally, during oral argument, Plaintiffs' counsel conceded that for the purposes of the Plaintiffs' Motion for Preliminary Injunction, Plaintiffs only

bring a facial challenge to the Strikeout Law. (*See* OA Tr. at 16:24–25–17:1–2.) When such a law implicates First Amendment rights, the challenger must show that the challenged law will result in a "substantial number" of unconstitutional applications. *See New York v. Ferber*, 458 U.S. 747, 769–71 (1982).

### 1. Likelihood of Success on the Merits

Plaintiffs argue that they are likely to succeed on their claim that the Strikeout Law: (1) is a content-based regulation on political speech and association, and (2) targets and restricts political speech based on the speaker's residency and employment status. (*See* MPI at 11–14.) Plaintiffs request that the Court evaluate the law under either strict scrutiny or the *Anderson-Burdick* standard. (*Id.* at 8.) However, as explained above, at this early stage in litigation, the Court declines to express any in-depth views on the proper resolution of this nuanced First Amendment claim without a more complete portrait of the disputed issues at stake. *See* discussion *supra* Section II.B.1.c. Certainly, Plaintiffs have not demonstrated that they are likely to succeed on the merits of their remaining First Amendment claim. There still exists a legitimate dispute between the parties as to the appropriate standard of scrutiny—a dispute that can only be resolved with further discovery and development of the issues.

### 2. Irreparable Harm

The Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (citing *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971)). In the Ninth Circuit, "'a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.'" *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (quotation and citations omitted).

But the Court has already concluded that Plaintiffs have failed to demonstrate a likelihood of success on the merits of their facial challenge to the Strikeout Law for impermissible regulation of speech based on the content of the speech and the identity of

the speaker. So Court is reluctant to find that Plaintiffs have raised a colorable First Amendment claim. The Court's reluctance is further compounded by the fact that Plaintiffs have at most alleged only speculative injury at this point. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable harm sufficient to warrant granting a preliminary injunction.").

For example, Plaintiffs argue that "each day the Strikeout law remains in effect is another day that the constitutional rights of Plaintiffs are irreparably harmed."[15] (MPI at 16–17.) But Plaintiffs only state that "[i]ndividual circulators like Miracle *likely* will not circulate petitions in the upcoming cycle unless the Strikeout Law is enjoined." (*Id.* at 17 (emphasis added).) Plaintiff Smallcanyon is alone among Plaintiffs in affirmatively stating that while the Strikeout Law remains in effect, she is "not willing" or "hesitant" to work as a circulator. (Compl. ¶¶ 8, 21.) Clean Energy Initiative employed Plaintiff Smallcanyon, a Tempe, Arizona resident, as a paid initiative-petition circulator in 2018. (*Id.* ¶ 21.) She was staying with family in southern Utah when she received notice of a subpoena to appear before the Maricopa County Superior Court on August 20, 2018. (*Id.*) Because she lacked a vehicle, a family member drove her to Flagstaff, Arizona, and from there she boarded a bus to Phoenix. (*Id.*) Once in Phoenix, she spent three days at a hotel and two days in court; she was eventually released without ever being called to testify. (*Id.*)

Plaintiff Smallcanyon is the sole Plaintiff to state that she is "not willing" to return as a circulator—which suggests that she is the exception and not the norm when it comes to recruiting circulators while the Strikeout Law remains in effect. Plaintiffs' stated harm is speculative, and "does not constitute irreparable harm sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs.*, 844 F.2d at 674; *see L.A. Mem'l Coliseum Comm'n v. N.F.L.*, 634 F.2d 1197, 1201 (9th Cir. 1980).

Plaintiffs' argument concerning initiative proponents NextGen and AFL suffers from similar deficiencies. Although Plaintiffs claim that the Strikeout Law has caused

---

[15] "I am not sure whether I will circulate initiative petitions again in the future if the Strikeout Law is still in effect because of my experience in 2018." (Doc. 9-8, Ex. 7, Decl. of Jessica Miracle ¶ 15.)

- 15 -

NextGen and AFL to "choose whether to refrain from core political activity altogether or amass and divert significant resources," causing initiative proponents to engage in such considerations does not constitute evidence of harm. (MPI at 17.) And neither NextGen nor AFL has testified that they will be absolutely refraining from "core political activity." Chris Fadeff, Chief Financial Officer and Vice President, Legal of NextGen, did not testify that NextGen would not back another initiative campaign in Arizona as long as the Strikeout Law was in effect. (*See* Doc. 9-2, Ex. 1, Decl. of Chris Fadeff ¶¶ 28–29.) And Tomás Robles, a member of AFL's steering committee, testified that AFL would be taking "several extra steps" when sponsoring a ballot initiative for the 2020 election to prepare "for the event that [the Strikeout Law] will be used as an offensive weapon against them." (*See* Doc. 9-3, Ex. 2, Decl. of Tomás Robles ¶¶ 27–35.) Although it might be "frustrating" for AFL to take those extra steps, frustration does not demand such an extraordinary remedy as a preliminary injunction. (*Id.* ¶ 35.)

The Court also notes that simply because the Strikeout Law exists, does not mean that it will be applied without fail to paid and out-of-state initiative-petition circulators. In their declarations, NextGen and AFL clearly state that they are preparing for the event that the Strikeout Law will be applied to their respective staff. But the threat of application is not tantamount to inevitability of application. *See O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (holding that injury alleged by plaintiffs was too speculative where injury would occur only "*if* [they] proceed[ed] to violate an unchallenged law and *if* they [were] charged, held to answer, and tried in any proceedings") (emphasis added); *City of S. Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980) (explaining that as there was "no immediate threat of suit nor reason to believe suit [was] inevitable," injury alleged was too speculative to constitute an "injury in fact"). The Court concludes that Plaintiffs have failed to demonstrate irreparable harm.

### 3. Balance of Equities & Public Interest

The Court considers the final two factors in tandem. *Drakes Bay Oyster*, 747 F.3d at 1092. Plaintiffs argue that the balance of equities and the public interest "strongly" favor

the issuance of an injunction. (*See* MPI at 17.) Plaintiffs submit a more generalized argument "'recogniz[ing] the significant public interest in upholding free speech principles,'" coupled with a more focused argument directed at Defendant: that the State cannot legally benefit from further enforcement of an illegal law. (*Id.* (citing *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)); *see* MPI at 17.) Defendant rejects Plaintiffs' characterization of the requested injunction as harmless, arguing that the Strikeout Law furthers the integrity of the initiative process, and the State has a compelling interest in ensuring the integrity of that process. (MPI Resp. at 12.) Defendant submits that enjoining the Strikeout Law "will make it more likely that registered initiative-petition circulators will flout subpoenas and be unavailable to provide necessary testimony in challenges to the eligibility of initiatives for the ballot."[16] (*Id.*)

But persuasive to the Court is an argument reiterated by Defendant's counsel during oral argument. Because the usual function of a preliminary injunction is to preserve the status quo, preliminary injunctions that alter the status quo before a full trial on the merits are disfavored.[17] (OA Tr. at 60:23–60:25.) The current status quo, Defendant submits, is the Strikeout Law remaining in place. (*Id.* at 60:25–61:1.) Defendant is right. As the Ninth Circuit explained in *Tanner Motor Livery, Ltd. v. Avis, Inc.*:

> It is so well settled as to not require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits. The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial. This is particularly true where the relief afforded, rather than preserving the status quo, completely changes it.

316 F.2d 804, 808–09 (9th Cir. 1963). Defendant also submits that because Plaintiffs seek mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, the Court must exercise extreme caution in deciding whether to issue such requested

---

[16] Defendant also argues that the issuance of a federal injunction will interfere with ongoing state proceedings. (*See* MPI at 12–13.)
[17] "[S]tatus quo means the last, uncontested status which preceded the pending controversy." *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (quotation and citation omitted).

relief. (MPI Resp. at 13); *see Stanley v. Univ. S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). Defendant is right again. Plaintiffs' requested injunction would indeed alter the status quo. *See Stanley*, 13 F.3d at 1320 (explaining that "prohibitory injunction" maintains status quo). Consequently, "unless the facts and the law clearly favor the moving party," the district court should deny such relief. *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (quotation and citation omitted).

Neither the facts nor the law "clearly favor" Plaintiffs. Plaintiffs' proposed injunction would prevent state court judges from disqualifying signatures where they have found that paid and out-of-state initiative-petition circulators have failed to comply with subpoenas. This contravenes existing law—the Strikeout Law. Furthermore, given that the Court has declined to conclude that Plaintiffs are likely to succeed on the merits of their surviving First Amendment claim (or have even alleged a colorable claim), it would be impractical to find here that "the facts and the law clearly favor" them. *See id.* For these reasons, the balance of equities and public interest do not tip in favor of injunctive relief, and the Court denies Plaintiffs' Motion for Preliminary Injunction.[18]

## IV.   CONCLUSION

The Court dismisses without prejudice Plaintiffs' First Amendment claims related to the Strikeout Law's impact on signature collection and impact on the pool of circulators. The Court dismisses with prejudice Plaintiffs' Fourteenth Amendment claims. The Court declines to dismiss Plaintiffs' First Amendment claim related to the Strikeout Law's regulation of communicative content and the speaker's identity, as well as Plaintiffs' underinclusiveness and overbreadth claims. Finally, the Court denies Plaintiffs' Motion for Preliminary Injunction.

**IT IS ORDERED** granting in part and denying in part Defendant's Motion to

---

[18] The Court does not specifically address Plaintiffs' underinclusiveness and overbreadth arguments with respect to the Motion for Preliminary Injunction because the same considerations concerning likelihood of success on the merits and irreparable harm that encumber their First Amendment claim apply here as well. And, again, the Court emphasizes that the usual function of a preliminary injunction is to preserve the status quo. *See Tanner Motor Livery*, 316 F.3d at 808. As with Plaintiffs' First Amendment claim, the Court is unwilling to alter the status quo at this time.

1  Dismiss (Doc. 16).

2  **IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Preliminary
3  Injunction (Doc. 9).

5  Dated this 16th day of December, 2019.

_____
Susan R. Bolton
United States District Judge