1   Mark Brnovich
    Attorney General
2   Firm Bar No. 14000

3   Kara Karlson (029407)
4   Assistant Attorney General
    2005 North Central Avenue
5   Phoenix, AZ 85004-1592
    Telephone (602) 542-4951
6   Facsimile (602) 542-4385
7   Kara.Karlson@azag.gov
    adminlaw@azag.gov
8
    *Attorneys for Defendant Arizona Secretary*
9   *of State Katie Hobbs*

10
11              **IN THE UNITED STATES DISTRICT COURT**

12              **FOR THE DISTRICT OF ARIZONA**

13  Jessica Miracle; et al.,

14              Plaintiffs,            Case No:  2:19-cv-04694-SRB

15  v.
                                      **RESPONSE TO PLAINTIFF'S MOTION**
16                                    **FOR RECONSIDERATION**
    Katie Hobbs, in her official capacity as
17  Arizona Secretary of State,

18              Defendant.

19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Contents**

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD ................................................................................................. 2

ARGUMENT............................................................................................................... 2

I.   The Court Properly Dismissed Some of Plaintiffs' First Amendment Claims ......... 2

   A.   The Court correctly held that the Strikeout Law does not implicate the First
Amendment at all ............................................................................... 2

   B.   The Timing of the Effects of a Regulation Is an Important Party of the
Constitutional Analysis ...................................................................... 4

   C.   Any Burden on Plaintiffs is Minimal Because it Is Remote, Attenuated, and
the Fact that People Must Appear When Served with a Court Order is
Uncontested ....................................................................................... 6

   D.   The Court Properly Considered the Facts Raised in Plaintiffs' Complaint,
but Those Facts Failed to State a Claim ............................................. 7

   E.   The State Provided a Number of Valid Interests Supporting the Rationale for
the Law............................................................................................... 8

II.  The Court's Equal Protection Analysis Was Correct ......................................... 13

   A.   *Soltysik v. Padilla* confirms the Court acted properly in dismissing
Plaintiffs' Equal Protection claim.................................................... 13

   B.   The Court Properly Considered *Stanwitz v. Reagan* ............................ 14

   C.   *OSU Student Alliance* Utilizes a Strict Scrutiny Test for Content-Based
Restrictions in a Public Forum And Is Thus Inapposite ...................... 16

CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*A.C.L.U. of Nevada v. City of Las Vegas*,
466 F.3d 784, 799 (9th Cir. 2006) ................................................................. 17

*Anderson v. Celebrezze*,
460 U.S. 780, 788-89 (1983) ................................................................... 1, 9

*Angle v. Miller*,
673 F.3d 1122, 1133 (9th Cir. 2012) ...................................................... 9, 12

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ......................................................................... 2, 8

*Biddulph v. Mortham*,
89 F.3d 1491, 1498 (8th Cir. 1996) ........................................................ 7, 10

*Buckley v. Am. Const. Law Found.,*
*Inc.*, 525 U.S. 182, 191 (1999) ......................................... 3, 4, 5, 10, 11

*Burdick v. Takushi*,
504 U.S. 428, 433-34 (1992) .............................................................. 1, 9, 15

*Conservation Force v. Salazar*,
646 F.3d 1240, 1242 (9th Cir. 2011) ............................................................. 2

*Dobrovolny v. Moore*,
126 F.3d 1111, 1113 (8th Cir. 1997) ............................................................. 7

*Dudum v. Arntz*,
640 F.3d 1098, 1106 n.15 (9th Cir. 2011) .................................................. 14

*Initiative & Referendum Institute v. Walker*,
450 F.3d 1085 (10th Cir. 2006) .............................................................. 3, 6

*Kona Enterprises, Inc. v. Estate of Bishop*,
229 F.3d 877, 890 (9th Cir. 2000) ................................................................. 2

*Lemons v. Bradbury*,
538 F.3d 1098 (9th Cir. 2008) .............................................................. 3, 6, 8

*Libertarian Party of Virginia v. Alcorn*,
826 F.3d 708, 719 (4th Cir. 2016) ....................................................... 10, 11

iii

*Meyer v. Grant*,
486 U.S. 414 (1988) ............................................................. 3, 5

*Monterey Cnty. Democratic Cent. Comm. v. U.S. Postal Serv.*,
812 F.2d 1194, 1200 (9th Cir.1987) ................................... 17

*OSU Student Alliance v. Ray*,
699 F.3d 1053, 1058-59 (9th Cir. 2012) ...................... 16, 17

*Prete v. Bradbury*,
438 F.3d 949, 962-63 (9th Cir. 2006) ................... 9, 10, 11

*Soltysik v. Padilla*,
910 F.3d 438 (9th Cir. 2018) .................. 2, 10, 13, 14, 16

*Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*,
708 F.3d 1109, 1115 (9th Cir. 2013) ................................... 2

*Stanwitz v. Reagan*,
245 Ariz. 344, 349 (2018) .................................................. 12

*Taxpayers United for Assessment Cuts v. Austin*,
994 F.2d 291, 298-99 (6th Cir. 1993) .................................. 4

*Timmons v Twin Cities Area New Party*,
520 U.S. 351, 358 (1997) .................................................. 11

*United States v. Verduchi*,
434 F.3d 17, 23 (1st Cir. 2006) ........................................... 8

*Voting for Am., Inc. v. Steen*,
732 F.3d 382, 392 (5th Cir. 2013) ....................................... 3

*Wellwood v. Johnson*,
172 F.3d 1007, 1008–09 (8th Cir.1999) ........................... 3, 6

**Rules**
Fed. R. Civ. P. 12(b)(6) ....................................................... 4

iv

## INTRODUCTION

This Court faithfully made the "hard judgment," (Doc. 51 at 4), required by precedent when analyzing claims like these. But in making these hard judgments, the Court reached conclusions that Plaintiffs do not agree with. Mere disagreement is not a sufficient ground to justify the extraordinary step of reconsidering this Court's well-reasoned and thorough order.

This Court correctly held in its December 16, 2019 order that the Strikeout Law does not implicate the First Amendment with respect to its impact on the pool of potential circulators or on signature collection for ballot initiatives. (Doc. 36 at 6-8.) Plaintiffs characterize the Court's dismissal of the burden on petition circulators as imposing a "temporal litmus test," and assert that no such test is supported by precedent. (Doc. 51 at 2-3.) Plaintiffs then assert that the Court did not adequately consider the Complaint's factual allegations with respect to the burden on signature collection and that the Court inappropriately weighed the evidence on their equal protection claims.[1] (*Id.* at 11-15.) Plaintiffs' protests are wrong, and inadequate to merit the extraordinary remedy of this Court's reconsideration.

Plaintiffs' rationale for reconsideration is conflicted. They argue on the one hand that the Court failed to consider the allegations in their Complaint as true, which is belied by the fact that the Order specifically considers Plaintiffs' allegations. (*See, e.g.* Doc. 36 at 8 (discussing the Complaint's allegations regarding Plaintiff Smallcanyon).) Conversely, they argue that it was premature to analyze the facts in the Complaint under the *Anderson/Burdick* balancing test. *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983); *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992). But *Anderson/Burdick* is the

---

[1] Although part III C of its motion labels the Plaintiffs' Equal Protection claim as "Count III," the complaint alleges Count III as "an undue burden on the right to vote." Compare Compl. at 32 with Mot. at 11. Plaintiffs do not make arguments with respect to the right to vote in its Motion. In addition, the introduction to the Plaintiffs' Motion does not mention the burden on the right to vote. The State therefore assumes that Plaintiffs are not contesting the Court's dismissal of Count III alleging an undue burden on the right to vote.

standard that the Court must use to determine if Plaintiffs will prevail, and it follows that is the test they must satisfy to show that they have presented "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Indeed, binding precedent supports this analysis. *See, e.g.*, *Soltysik v. Padilla*, 910 F.3d 438 (9th Cir. 2018) (reviewing district court's order granting a motion to dismiss under *Anderson/Burdick*'s balancing test).

The Court did not commit "manifest error," (Doc. 51 at 2), and therefore the Plaintiffs' Motion for Reconsideration should be denied.

## LEGAL STANDARD

Granting a motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotations omitted). "Indeed, a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Id.* Plaintiffs offer no new evidence and there has been no intervening change in the controlling law. Plaintiffs assert clear error. The Court did not commit clear error when it dismissed Plaintiffs First and Fourteenth Amendment claims.

Dismissal for failure to state a claim is proper when the complaint lacks a cognizable legal theory, or lacks sufficient facts to support a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must plead "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, 708 F.3d 1109, 1115 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). This "accepted-as-true" principle, however, does not apply to legal conclusions or conclusory factual allegations. *Iqbal*, 556 U.S. at 681.

## ARGUMENT

**I.  The Court Properly Dismissed Some of Plaintiffs' First Amendment Claims**

**A.    The Court correctly held that the Strikeout Law does not implicate the First Amendment at all**

2

Arizona has "considerable leeway" in protecting the integrity and reliability of the initiative process. *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 191 (1999). Accordingly, courts have recognized that the First Amendment is not implicated by laws that regulate the process by which initiatives are enacted. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099-1100 (10th Cir. 2006); *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 392 (5th Cir. 2013) ("[N]ot every procedural limit on election-related conduct automatically runs afoul of the First Amendment[,]" but only those that "restrict political discussion or burden the exchange of ideas."). Rather, the First Amendment is implicated when regulations dictate *who* can speak or *how* they can go about speaking. *See Walker*, 450 F.3d at 1099. Because the Strikeout Law applies only to the process by which initiatives are enacted, by providing clear remedies for circulators who do not respond to subpoenas and do not restrict political discussion, the First Amendment is not implicated.

For example, when a law bans paid circulators from speaking, *see generally*, *Meyer v. Grant*, 486 U.S. 414 (1988), or when circulators are required to wear a name badge at the time of circulating and disclose their name, address, and pay in monthly and after-filing reports, the First Amendment is implicated. *See generally*, *Buckley*, 525 U.S. 182. In contrast, laws that require a higher number of signatures or votes for initiatives on some subjects, but not others, does not implicate the First Amendment because they merely regulate the process by which the initiative obtains ballot access or is enacted. *See Wellwood v. Johnson*, 172 F.3d 1007, 1008–09 (8th Cir.1999) (finding that a law requiring more signatures for initiatives to change a county from "'wet' to 'dry' or vice versa" did not violate the First Amendment "because it did not infringe upon the ability to circulate petitions or otherwise engage in political speech[.]");*Walker*, 450 F.3d at 1085 ("[W]e hold that a constitutional provision imposing a supermajority requirement for enactment of initiatives on certain topics does not implicate the freedom of speech.") .

The fact that signatures *may* be invalidated *if* circulators refuse to respond to valid subpoenas does not mean the First Amendment is implicated. *See Lemons v. Bradbury*, 538 F.3d 1098 (9th Cir. 2008) (upholding the disqualification of petition signatures because the signatures did not match the signatures on the voters' voter registration cards

even though voters requested to rehabilitate their signatures with extrinsic evidence); *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 298-99 (6th Cir. 1993) (upholding the invalidation of petition signatures for failing to include statutorily required language and for misdating the petition sheets).

**B.      The Timing of the Effects of a Regulation Is an Important Party of the Constitutional Analysis**

In this case, Plaintiffs mischaracterize the Court's dismissal of the burden on petition circulators as imposing a "temporal litmus test." (Doc. 51 at 2-3.) What the Court actually concluded was that the "law does not reduce the pool of potential circulators in a manner that impacts the communicative conduct of the petition circulator[.]" (Doc. 36 at 6.) In other words, the Court concluded correctly that the law does not implicate the First Amendment at all.

Contrary to Plaintiffs' assertions, *Buckley* does not stand for the proposition that the timing of a regulation's impact is irrelevant to a First Amendment analysis. At several points the *Buckley* court noted that timing was relevant to its analysis. For example, the *Buckley* court noted that the requirement that circulators file an affidavit "must be met only after circulators have completed their conversations with electors" and on that basis the Court held it out as an example of an acceptable regulation. *Buckley*, 525 U.S. at 200. And, in contrasting the affidavit requirement with the name badge requirement, the court stated: "Unlike a name badge worn at the time a circulator is soliciting signatures, the affidavit is separated from the moment the circulator speaks." *Id.* at 198. Thus, "the name badge requirement forces circulators to reveal their identities at the same time they deliver their political message; it operates when reaction to the circulator's message is immediate . . ." *Id.* at 198-99 (internal quotations removed). It is therefore apparent that the timing of a regulation's burden is a relevant factor under the First Amendment.

Plaintiffs urge that the more important question "is not *when* in the process a restriction is imposed, but rather *whether* it imposes 'undue hindrances to political conversations and the exchange of ideas.'" (Doc. 36 at 5 (quoting *Buckley*, 525 U.S. at 192) (emphasis original).) But that is exactly what the Court held when it contrasted the

burdens on speech in *Meyer* and *Buckley* with the Strikeout Law and ruled that the latter did not burden political conversations or the exchange of ideas. (Doc. 51 at 6.) The Court's emphasis on the temporal aspect of how the Strikeout Law operates was only a means of demonstrating that the law does not, as is required to implicate the First Amendment, dictate who can speak or how they go about speaking.

Plaintiffs rely heavily on *Buckley* and *Meyer*, but overlook glaring distinctions noted by the Court. For example, in *Buckley*, the reporting requirements were automatically triggered the moment circulators began their work. The timing in this case reveals two critical factors for determining whether the First Amendment is implicated at all: the certainty of whether the alleged burden will take place and whether the circulators have any control over avoiding the alleged burden. In *Buckley*, neither factor was at issue because the name badge was donned the minute the circulator began collecting circulators, and the reporting requirements began as the minute the circulators began their work. *Buckley*, 525 U.S. at 197-98. Likewise, in *Meyer*, the ban on paying circulators was a direct burden imposed by the law on the activity of gathering signatures *before* any signatures were collected. *Meyer*, 486 U.S. at 422-43. If a person wanted to collect signatures for pay, they were prohibited from petitioning. *Id.* These laws limited the pool of signature collectors by imposing immediate, non-contingent requirements on circulators. Contrary to Plaintiff's assertion that the laws at issue in *Meyer* and *Buckley* were "not implicated until after signature gathering occurs," (Doc. 51 at 4), those laws placed a meaningful burden on all circulators at the time of signature gathering because the requirements were *certain* to take effect for those wishing to circulate petitions and therefore the burdens were felt *immediately* by circulators and would-be circulators.

Here however, the law does not directly burden circulators or would-be circulators because the alleged burden only takes place if two contingencies are met: a validly issued subpoena for a specific circulator, and the circulator's refusal to comply. Whether a circulator complies with the subpoena or moves to quash is entirely within the control of the circulators themselves.

5

**C.    Any Burden on Plaintiffs Is Minimal Because It Is Remote, Attenuated, and the Fact that People Must Appear When Served with a Court Order Is Uncontested**

The Court noted another "critical deficiency" in Plaintiff's argument was the "underdeveloped relationship between the Strikeout Law and the chilling of statewide conversation related to a potential ballot measure." (Doc. 51 at 7.) The relationship is underdeveloped because of the *indirect* nature of the alleged burden—the possibility of having signatures stricken *if* a subpoena is issued *and* circulators do not comply—not simply because it may happen after signature gathering. Similarly, the Court emphasized that "[u]nder the Strikeout Law, the State's subpoena power does not prompt *automatic* disqualification of a circulator's signatures."[2] (Doc. 36 at 8 (emphasis added).)

Comparing to the *Lemons* and *Austin* decisions further underscores this point. Those courts upheld invalidation of signatures based on the direct regulation of signature gathering. *See Lemons*, 538 F.3d at (requiring petition sheets to be correctly dated and signed). If direct regulation of signature gathering does not raise constitutional concerns, then the potential invalidation of signatures under the indirect regulation of signature gathering by requiring petition circulators to respond to subpoenas and testify to the validity of the signatures they gathered does not implicate the First Amendment.

Rather, the Strikeout Law is more like the laws at issue in *Wellwood* and *Walker* that regulated initiative *processes* rather than substantive political speech. In those cases, the laws at issue required a higher number of signatures for initiatives on certain subjects to qualify for the ballot. Here, the Strikeout Law merely regulates one process by which signatures can be verified—through the testimony of circulators. Requiring a higher number of signatures for some subjects unquestionably makes it more difficult for those subjects to make the ballot. Yet these laws were upheld. *Wellwood*, 172 F.3d at 1010; *Walker*, 450 F.3d at 1085. If a direct requirement for more petition signatures does not implicate the First Amendment, then a regulation that incidentally requires more

---

[2]    Plaintiffs do not dispute the court's general authority to issue subpoenas which circulators must comply with, or may face penalties up to and including jail time. If *jail* is not an unconstitutional burden, it is illogical to argue that striking signatures is.

6

signatures certainly does not either. This Court agreed when it stated that the "Strikeout Law pertains to subpoena compliance" and not the regulation of speech. (Doc. 36 at 7-8.)

### D. The Court Properly Considered the Facts Raised in Plaintiffs' Complaint, but Those Facts Failed to State a Claim

Plaintiffs further complain that the Court failed to adequately take into account the facts alleged in the Complaint. (Doc. 51 at 7-9.) For example, Plaintiffs claim the Court ignored the ways in which the Strikeout Law makes it more difficult to qualify for the ballot because petition circulators will have to set higher targets for numbers of signatures to compensate for the potential that some signatures may be struck. (Doc. 51 at 10.) Yet, the Court specifically mentioned this fact in its Order. (Doc. 36 at 7.) It is therefore safe to assume that the Court gave Plaintiffs' facts their due consideration. The Court also pointed out Plaintiffs' failure to rebut the crucial fact that the Strikeout Law does not automatically prompt disqualification of petition signatures. (*Id.* at 8.) Even if the Court had not considered Plaintiffs' allegations of additional difficulty and expense, such allegations are simply insufficient, as a matter of law, to raise a cognizable claim. *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997) ("[T]he difficulty of the process alone is insufficient to implicate the First Amendment, as long as the communication of ideas associated with the circulation of petitions is not affected."); *Biddulph v. Mortham*, 89 F.3d 1491, 1498 (8th Cir. 1996) ("But *Meyer* does not require us to subject a state's initiative process to strict scrutiny in order to ensure that the process be the most efficient or affordable.").

Plaintiffs' complaint that the court did not give adequate consideration of the facts contained in their complaint is more the result of Plaintiffs' inadequate factual allegations than the Court's failure to recognize them. Indeed, Plaintiffs only pointed to *one* petition circulator that may have decided not to participate as a petition circulator as a result of the law. (Doc. 1 at 7-10 (stating that Plaintiff Lord only "cannot commit" to being a circulator in the future).) The allegations regarding the other individual Plaintiffs point to their "fear" that their signatures will be invalidated. (*Id.* at 10 (stating that Plaintiff Lord is "concerned" that signatures she may gather in the future might be stricken as a result of

the law); *id.* at 10-11 (stating that Plaintiff Katz is *likely* to sign petitions in the future but "fears" that her signature may be invalidated).) In addition, Plaintiffs' own motion acknowledges the Court's analysis, and rejection, of the allegation that Plaintiff Miracle suffered First Amendment harm because she declined a job as a petition circulator for a mayoral candidate, erroneously thinking that the Strikeout Law applies to candidate petitions. (Doc. 51 at 5-6.) Finally, Plaintiffs' assertion that the Court ignored the allegations regarding NextGen is belied by the extensive discussion regarding NextGen during oral argument.

Although it is clear the Court did in fact give Plaintiffs' factual allegations due consideration, the Court is not obligated to give every bit of reasoning for its decision nor is it obligated to address every factual allegation in a ruling on a motion to dismiss. *See United States v. Verduchi*, 434 F.3d 17, 23 (1st Cir. 2006) ("It is commonplace that courts usually need not in their opinions be explicit about every detail of an analysis."). Ultimately, and most importantly, the Court's conclusion that "Plaintiffs have simply failed to show facts or circumstances demonstrating" that the First Amendment is implicated at all with respect to signature collection or the pool of potential circulators was correct and supported by the facts and the relevant law. (Doc. 36 at 7.)

E.     **The State Provided a Number of Valid Interests Supporting the Rationale for the Law**

Even assuming the Strikeout Law implicates the First Amendment, Plaintiffs have failed to allege sufficient facts showing they might be entitled to relief. Plaintiffs complain that the Court improperly weighed the evidence in its ruling on the motion to dismiss. (Doc. 51 at 8.) To the extent the Court did weigh evidence, or applied the appropriate balancing test, it was necessary to test the sufficiency of Plaintiffs' claims. And more importantly, this Court's conclusion was correct.

Conclusory statements that plaintiffs were harmed because their speech has been chilled or that their initiatives will be more difficult to get on the ballot are not sufficient to state a claim for which relief can be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also, e.g. Lemons*, 538 F.3d at 1106-07 (finding Plaintiffs' statements that

certain signature-verification procedures was insufficient to demonstrate a violation of their rights). Legal conclusions that a plaintiff was harmed must be supported by specific factual allegations. *Id*. Otherwise, those legal conclusions are not entitled to an assumption of truth. *Id*. In other words, the mere assertion of harm without a showing that the harm resulted from legally impermissible actions is insufficient. *See Id*.

For example, laws may limit the pool of potential circulators or signature collection without running afoul of the First Amendment. *See Prete v. Bradbury*, 438 F.3d 949, 962-63 (9th Cir. 2006) (upholding Oregon's ban on paying circulators on a per-signature basis even though it reduced the pool of potential circulators). In such cases, the critical inquiry is not simply whether plaintiffs have been harmed, but whether the State's interest in the regulation outweighs the burden placed on Plaintiffs. *See id*. "[A] State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id*. Courts considering election law challenges "weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992), (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

In addition, a regulation does not violate the First Amendment simply because it makes it makes it more difficult for initiatives to gain ballot access. *See Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012). In *Angle*, the Ninth Circuit rejected a First Amendment challenge to a Nevada law that required a certain number of voters in every county to support an initiative in order for it to qualify for the ballot. *Id*. The Plaintiffs in *Angle* complained that the law would require them to travel and would make it more expensive to qualify initiatives for the ballot. *Id*. at 1133-34. The Angle court held that Nevada's important interest in ensuring statewide support for initiatives easily outweighed the plaintiffs' alleged burdens. *Id*. at 1135.

In order to evaluate whether a claim states a cognizable legal theory under the First Amendment in an election case, weighing the burdens asserted by the Plaintiff is a required part of the Court's analysis. *See Soltysik v. Padilla*, 910 F.3d 438, 444-47 (9th Cir. 2018) (applying *Anderson/Burdick* standard to reverse a dismissal of First Amendment challenge)[3].   For example, in affirming dismissal, the Fourth Circuit in *Alcorn* weighed Virginia's interests in its ballot order statute against the Plaintiff's claimed burdens. *Libertarian Party of Virginia v. Alcorn*, 826 F.3d 708, 719 (4th Cir. 2016). The Plaintiff protested that weighing interests was not appropriate at that stage but the court rejected those protests, noting that in cases where strict scrutiny did not apply, the state only needs to clear the low bar of articulating its asserted interests. *Id.*

In this case, Plaintiffs have asserted that the Strikeout Law "effectively restricts the pool of available circulators, complicates the signature-gathering process, [and] increases expenses . . ." thereby chilling speech. Mot. at 2. An allegation of increased expense in a past case is insufficient to state a claim, or nearly any regulation could be challenged as constitutionally infirm.  *Biddulph*, 89 F.3d at 1498 (noting that regulations on the initiative process are not required by *Anderson/Burdick* to be "the most efficient or affordable.").   On the other hand, the Strikeout Law furthers the important interest of protecting the integrity of the initiative process by ensuring that crucial witnesses will be available to testify regarding their petition signatures. *Buckley*, 525 U.S. at 184 (noting the "State's strong interest in policing lawbreakers among petition circulators by ensuring that circulators will be amenable to the Secretary of State's subpoena power . . ."); *Prete*, 438 F.3d at 953 (noting the state's "interest in protecting the integrity of the initiative process . . .").

---

[3] In reversing the district court's dismissal in *Soltysik*, the Ninth Circuit noted that "without any factual record at this stage, we cannot say that the Secretary's justifications outweigh the constitutional burdens on Soltysik as a matter of law." *Soltysik*, 910 F.3d at 447. However, as described in greater detail in part part II.A below, this does not foreclose the possibility of relying on the *Anderson/Burdick* test to dismiss a First Amendment claim as the district court in *Soltysik* did. *Id*. at 443. The Ninth Circuit did not suggest that the district court erred in weighing the evidence but only that it thought the evidence was sufficient to survive a motion to dismiss.

To begin, Plaintiffs do not seem to appreciate the difference between a cognizable *claim* or legal theory and a cognizable *harm*. (Doc. 51 at 6.) Plaintiffs have failed to make a showing that their allegations outweigh the State's substantial interests as required to state a cognizable legal claim under *Anderson/Burdick*. Without such a showing, Plaintiffs have failed to demonstrate that they may be entitled to relief.

In its Order, the Court agreed with Defendant that Plaintiffs' asserted harms only constitute a "lesser burden" and that therefore the State only needed to show an important interest to survive First Amendment scrutiny. (Doc. 36 at 6 (quoting *Prete*, 438 F.3d at 963–65).) In distinguishing *Meyer*, the Court also implicitly held that Plaintiffs' asserted harms did not meaningfully restrict political expression. *See id.* The Court also took issue with the insufficiency of Plaintiffs' evidence. *See id.* This was the correct conclusion. *See, e.g. Timmons v Twin Cities Area New Party*, 5520 U.S. 351, 358 (1997).

To the extent these points constitute weighing the evidence it was simply the application of a basic test of sufficiency regarding Plaintiffs' claims. *See Alcorn*, 826 F.3d at 718 (applying *Anderson/Burdick* to affirm dismissal of First Amendment challenge). In order to show a cognizable claim, Plaintiffs had to demonstrate that their alleged burden could plausibly outweigh the State's interests under *Anderson/Burdick*. Thus, the Court necessarily had to engage with the proffered evidence and the Court correctly concluded it was simply insufficient to state a cognizable legal claim given the "lesser burden" imposed by the law. (Doc. 36 at 6 (quoting *Prete*, 438 F.3d at 963–65).) Moreover, the Court's analysis explicitly recognized that it was limited in its ability to weigh the evidence at this stage. (Doc. 36 at 10 ("[A]t this early stage of litigation, the Court is unwilling to express detailed views on the proper resolution of this First Amendment question without a fuller development of the disputed issues in the case." (cleaned up)).) The Court knew what it was doing.

As in *Alcorn*, the Court only needed to show that the State's interests passed a "low bar." *Alcorn*, 826 F.3d at 719. The State's interests go well beyond that bar since the Strikeout Law fulfills the important interest of policing lawbreakers among circulators. *See Buckley*, 525 U.S. at 184. If circulators fail to appear for a subpoena there is virtually

no way for the State to fulfill its important interest in assuring the integrity of elections. *See Stanwitz v. Reagan*, 245 Ariz. 344, 349 (2018), as amended (Nov. 27, 2018) (stating that "the integrity of the signature collection process is singularly dependent on the probity of circulators . . ."). The State therefore enacted a reasonable method to ensure it could prove the legitimacy of petition signatures: strike those signatures of circulators who fail to respond to a valid subpoena to testify regarding the signatures.

Plaintiffs mischaracterize the burden on circulators as a "meaningless physical appearance at the whim of a challenger . . ." (Doc. 51 at 3.) A subpoena should not be so characterized. If it was meaningless or based on a whim, then it could easily be quashed and the statute would be inapplicable. If it is valid, then circulators need only do what is expected of any other citizen: comply with a valid court order. That is completely within the control of the circulators. Plaintiffs would have it that where some individuals may experience a hardship in complying with a subpoena, this equates to a statutorily imposed burden on speech. But this burden is no different than that imposed on any other recipient of a valid subpoena.

Plaintiffs cite *Angle* to support conclusions that the Strikeout Law imposes an unconstitutional burden, but *Angle* is actually damaging to Plaintiffs' claims. The law at issue here required initiative proponents to collect a significant number of signatures from all of Nevada's congressional districts. *Angle v. Miller*, 673 F.3d 1122, 1127 (9th Cir. 2012). The Ninth Circuit did not give weight to the plaintiffs' claims that the law in question made petition circulation more expensive or difficult because of the travel it required, noting that plaintiffs did not show they could not have easily overcome those burdens. *Angle*, 673 F.3d at 1133-34. Even worse for Plaintiffs, the law in *Angle* applied directly to signature gathering *at the time the signatures are gathered. Id.* On the other hand, the Strikeout Law only applies to compliance with a subpoena, not on the activity of signature gathering. (Doc. 36 at 7-8.) Plaintiffs have failed to show why simply complying with a subpoena is so burdensome as to outweigh the State's important interests. Absent that showing, Plaintiffs' claims were properly dismissed.

1

## II. The Court's Equal Protection Analysis Was Correct

2

**A.** ***Soltysik v. Padilla* confirms the Court acted properly in dismissing Plaintiffs' Equal Protection claim**

3

4

The Court also properly dismissed Plaintiffs' Equal Protection claim and

5

Plaintiffs' Motion offers no reason to grant the extraordinary remedy of reconsidering the

6

Court's decision. Plaintiffs assert that the Court's dismissal cannot be squared with

7

*Soltysik v. Padilla*, 910 F.3d 438 (9th Cir. 2018). (Doc. 51 at 11.) Plaintiffs misread that

8

case.

9

In *Soltysik*, the Ninth Circuit reversed a district court's dismissal of a First and

10

Fourteenth Amendment challenge to California's election statute requiring certain minor-

11

party candidates to list on the ballot their party preference as "none." *Soltysik*, 910 F.3d at

12

444. As an initial matter, *Soltysik* is of limited utility because the provision of a

13

candidate's party affiliation on the ballot is an actual restriction on protected speech,

14

rather than the post-petition subpoena requirement issued here. So, while the district court

15

applied the *Anderson/Burdick* standard and dismissed the plaintiff's claim, *id*. at 443, the

16

Ninth Circuit disagreed. But the Ninth Circuit's disagreement arose not because the

17

district court engaged in *Anderson/Burdick* analysis, but because it weighed plaintiff's

18

allegations of harms and the state's proffered interests differently. The Ninth Circuit's

19

*Anderson/Burdick* analysis concluded that the law imposed more than a slight burden on

20

plaintiffs. *Id*. at 445. Turning to the "other side of the scale" (an obvious indication that

21

the court was balancing the competing interests), the Ninth Circuit struggled to see how

22

the government's interest in avoiding voter confusion was advanced by the law. *Id*. at

23

446-47. The Ninth Circuit simply could not say at that stage of litigation that the law was

24

constitutional as a matter of law without further factual inquiry. *Id*. at 447. Nowhere did

25

the *Soltysik* court suggest that it was improper to weigh the evidence or apply

26

*Anderson/Burdick* at the motion to dismiss stage.

27

Far from being at odds with this Court's decision in this case, *Soltysik* confirms

28

that the Court engaged in the proper analysis by concluding that the Strikeout Law places

a minimal burden on Plaintiffs' rights so that either the First and Fourteenth Amendments

13

are not implicated at all or that the alleged burdens are not sufficiently weighty to override the State's interests. Contrary to Plaintiffs' assertions that "like the district court [in *Soltysik*], the Court skipped its own context-specific inquiry and prematurely weighed facts without an evidentiary record," (Doc. 51 at 12), this Court did precisely what the Ninth Circuit and district court did in *Soltysik*: evaluate the sufficiency of evidence to decide whether Plaintiffs have stated cognizable claims. That the Ninth Circuit used the same test to come to a different conclusion in a completely different case does not indicate that this Court acted improperly in dismissing Plaintiffs' claims. Rather, it confirms the Court followed the correct pattern. Under Plaintiffs' view, a district court would almost *never* dismiss a First Amendment challenge to an election law and remain consistent with *Soltysik*. This position reads too much into *Soltysik*.

**B.    The Court Properly Considered *Stanwitz v. Reagan***

Plaintiffs then take issue with the Court's analysis because it relied on *Stanwitz v. Reagan* rather than relying on allegations in the complaint. The Secretary has already addressed Plaintiffs' arguments concerning the Court's reliance on the complaint. *See* supra, 6-7. The First and Fourteenth Amendment analyses are rolled into one under *Anderson/Burdick*. *Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011). Thus, Plaintiffs are misguided to take issue with the Court's supposed lack of factual analysis in its Fourteenth Amendment section. (Doc. 36 at 10-11.) It is apparent that the Court relied on the same facts and similar analysis for both its conclusions that the Strikeout Law does not implicate either the First or Fourteenth Amendment. The Court was not obligated to repeat the facts alleged in the complaint to indicate that it relied on them.

The Court simply added another element in its analysis of the law's alleged burdens by pointing out that the Arizona Supreme Court had held that the law does not "unduly hinder or restrict[]" the people's right to enact initiatives. (Doc. 36 at 11 (quoting *Stanwitz*, 429 P.2d at 1143).) The Court was fully aware that the question in *Stanwitz* was decided under the Arizona Constitution. (*Id*.) But it concluded that the lack of any burden presented by the law as determined by the Supreme Court, in a case where there was a full trial on the merits including contentions that the Strikeout Law was a burden on the

14

initiative proponent, was highly relevant to the Court's Fourteenth Amendment analysis in this case. In fact, the Court explicitly linked the two analyses. (*Id.* at 12 (stating that the Arizona Supreme Courts holding meant that the "Strikeout Law does not severely burden Plaintiff's fundamental right to vote.").)

Analyzing any burden presented by the law on the ballot initiative process is similar to determining the burden on voting rights and Equal Protection. In both cases, the Court is required to weigh the burdens on the people's ability to promote and enact laws by ballot initiative. In fact, the *Anderson/Burdick* standard appears to be less stringent than the standard used by the *Stanwitz* court. Under *Anderson/Burdick*, courts apply a "flexible standard," weighing the burden on the plaintiff against the state's asserted interests. *Burdick*, 504 U.S. at 433-34. On the other hand, in *Stanwitz*, the standard was that the law would be "permissible if it does not unreasonably hinder or restrict the constitutional provision *and* if the statute reasonably supplements the constitutional purpose of the provision." *Stanwitz*, 429 P.3d at 1143 (emphasis added) (internal quotations removed). At the very least, the *Stanwitz* reasoning is sufficient, in conjunction with this Court's additional analysis, to justify the Court's conclusion that because "the Strikeout Law does not hinder or restrict the initiative process, this Court concludes that the Strikeout Law does not severely burden Plaintiffs' fundamental right to vote." (Doc. 36 at 12.)

The Court did not abdicate its duty to apply the law. (Doc. 51 at 14.) The Court simply relied on the on the fact, among many other facts alleged in the Complaint, that the Arizona Supreme Court determined that the law did not present a meaningful burden on Plaintiffs' rights.[4] Put simply, partly relying on another court's conclusions about the application of a challenged law to support its own independent conclusion is not the equivalent of abdicating the Federal Court's duty to interpret and apply the U.S. Constitution.

---

[4] In a motion to dismiss, courts may rely on judicially noticeable facts which include the opinions of other courts. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

At bottom, Plaintiffs' motion is simply a reflection of their frustration that the Court did not side with them. Plaintiffs complain that "[h]ad the Court conducted the context-specific inquiry into the sufficiency of the allegations that *Soltysik* requires, it would have concluded that Plaintiffs state a cognizable *Anderson/Burdick* claim." (Doc. 51 at 15 (internal citation removed).) Note the contradiction. Plaintiffs complain that the Court "skipped its own context-specific inquiry" but also that it prematurely weighed the facts. (Doc. 51 at 12.) Plaintiffs cannot have it both ways. As explained above, the Court *did* conduct its own inquiry as to the sufficiency of the Plaintiffs' allegations, and conducted the required *Anderson/Burdick* analysis, just as the Ninth Circuit did in *Soltysik*, 910 F.3d at 444. Part of that analysis included reviewing the findings in *Stanwitz.* Based on that inquiry, the Court correctly concluded that Plaintiffs failed to state a cognizable legal claim under either the First or Fourteenth Amendments.

Curiously, Plaintiffs finish this section of their motion by pointing to Plaintiffs Mary Katz, Mendon Dornbrook, and Lonnie Arrington, who had their signatures struck from initiative petitions. (Doc. 51 at 15.) But Plaintiffs do not explain how those voters' Equal Protection rights are alleged to have been violated. Insofar as their voting rights or ballot access rights are at issue, the Court squarely addressed those issues and correctly concluded that those rights are not burdened.

### C.   *OSU Student Alliance* Utilizes a Strict Scrutiny Test for Content-Based Restrictions in a Public Forum And Is Thus Inapposite

Plaintiffs finally assert that the Ninth Circuit's decision in *OSU Student Alliance v. Ray* compels the Court to reconsider its dismissal of their Equal Protection claim. Not so. In *OSU*, a university removed and trashed the news bins for one student-based paper based on an "unwritten policy" that limited where news bins could be located. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1058-59 (9th Cir. 2012). However, it had given the newspaper permission to put news bins in some of those locations already, and failed to remove other news bins (for papers affiliated and unaffiliated with the university) from those and other locations around campus. *Id.* The Ninth Circuit had no difficulty deciding this was a content-based restriction of speech in a public forum and thus triggered strict

scrutiny. *Id.* at 1062. There was no *Anderson/Burdick* balancing analysis conducted in *OSU* because the case did not relate to election procedures, and thus the case in apposite. Furthermore, the Ninth Circuit has been clear that the Equal Protection claims proceed parallel to First Amendment claims in cases concerned speech in a public forum, not cases governing the regulation of elections. *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 799 (9th Cir. 2006); *Monterey Cnty. Democratic Cent. Comm. v. U.S. Postal Serv.*, 812 F.2d 1194, 1200 (9th Cir.1987); *see also OSU Student All.*, 699 F.3d at 1067.

The Court correctly applied *Anderson/Burdick*, and determined that Plaintiffs burden was not severe and that the Secretary provided a valid reason to reject the signatures from circulators who fail to respond to a subpoena. (Doc. 26 at 11-2.)

## CONCLUSION

The Court did not commit manifest error, and Plaintiffs have failed to meet the high bar required for reconsideration of the Court's order. Accordingly, Plaintiffs' Motion for Reconsideration should be denied.


Respectfully submitted this 3rd day of February, 2020.

Mark Brnovich
Attorney General


 */s/ Kara Karlson*
Kara Karlson
*Attorney for Defendant*
*Arizona Secretary of State Katie Hobbs*

**CERTIFICATE OF SERVICE**

The foregoing was e-filed with the Clerk of the Federal Court for the District of

Arizona using the CM/ECF System on February 3, 2020, which served all counsel:

Sarah R. Gonski (# 032567)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
SGonski@perkinscoie.com

Elisabeth C. Frost (WDC# 1007632)*
Uzoma N. Nkwonta (WDC# 975323)*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211
EFrost@perkinscoie.com
UNkwonta@perkinscoie.com

*Counsel for Plaintiffs*


/s/ Misty Keys
Assistant to Kara Karlson

18